Ernestine GREENE, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, LOS ANGELES,
CALIFORNIA, Respondent.

No. 17664.

United States Court of Appeals
Ninth Circuit.

Jan. 17, 1963.

Gordon, Kidder & Price, and Jack T.
Price, Los Angeles, Cal., for petitioner.

Francis C. Whelan, U. S. Atty., Donald
A. Fareed, Asst. U. S. Atty., Chief of
Civil Division, and Robert A. Smith,
Asst. U. S. Atty., Los Angeles, Cal., for
respondent.

Before MERRILL and DUNIWAY,
Circuit Judges, and TAVARES, District
Judge.

TAVARES, District Judge.

On March 21, 1961, petitioner Ernestine Greene filed a complaint in the United States District Court for the Southern District of California for a judgment declaring that petitioner was not deportable from the United States. The complaint was originally filed pursuant to Section 10 of the Federal Administrative Procedure Act, 5 U.S.C. § 1009, which provided for review of deportation orders by an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. After respondent George K. Rosenberg, as District Director, Immigration and Naturalization Service, Los Angeles, California, had filed an answer, and while the cause was awaiting pre-trial, Public Law 87–301 (approved Sept. 26, 1961 and effective October 26, 1961) became effective (75 Stat. 651). Section 5(a) of that law, now 8 U.S.C. § 1105a, provided that judicial review of deportation orders was thenceforth to be by petition to the courts of appeals. As required by Section 5(b) Public Law 87–301 (quoted in 8 U.S.C.A., 1961 Ann.Cum.Pocket Parts, in Note to § 1105) this pending case was transferred from the district court to this court.[1]

Petitioner, a native and citizen of Austria, was lawfully admitted to the United States for permanent residence on June 28, 1952, and has resided continuously in the United States since that time. She made two short visits to Mexico, one in 1956, and the other about 1958 or 1959, being readmitted each time as a returning resident alien.

In April, 1960, she was served with an Order to Show Cause and Notice of Hearing issued by the Immigration and Naturalization Service (hereinafter sometimes called the "Service") requiring her to appear for hearing and show cause why she should not be deported from the United States as an alleged alien who had engaged in prostitution.[2]

A hearing before a Special Inquiry Officer was duly held, at which evidence was presented in support of the charge, and ample opportunity was afforded to petitioner, who was represented by counsel, to present any defense she might desire to offer. At the hearing petitioner testified orally, both on direct examination and on cross-examination by her counsel. Two previous sworn statements of petitioner made to and at the request of Investigator Barrow, on March 7 and April 6, 1960, respectively, were identified by petitioner and admitted in evidence.

From an adverse ruling of the Special Inquiry Officer based on this first hearing petitioner duly appealed to the administratively created[3] Board of Immigration Appeals, Washington, D. C., which, after the case had been duly briefed and orally argued, rendered a decision sustaining the Inquiry Officer's findings of fact and conclusions of law.

Thereafter petitioner moved the Board of Immigration Appeals to reopen the

---

1. Section 5(b) of Public Law 87–301 supra reads in part as follows:
   " * * * Any judicial proceeding to review an order of deportation which is pending unheard in any district court * * * on the effective date of this section * * * shall be transferred for determination in accordance with this section to the court of appeals having jurisdiction * * *".

2. The applicable statutory provisions are: 8 U.S.C.A. § 1251(a) (12) reading in part:
   "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who * * *
   "(12) by reason of any conduct, behavior or activity at any time after entry became a member of any of the classes specified in paragraph (12) of section 1182(a) of this title; * * *".
   8 U.S.C.A. § 1182(a) (12) provides:
   "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States.
   *      *      *      *      *
   "(12) Aliens who are prostitutes or who have engaged in prostitution, or aliens coming to the United States solely, principally, or incidentally to engage in prostitution; * * *."

3. 8 C.F.R. (1961 Cum.Pocket Supp.) § 3.1 et seq.

hearing in her case for the purpose of allowing her to introduce alleged new evidence. Accompanying this motion was petitioner's affidavit in which she swore, among other things, that she had been upset when her statements had been taken by Investigator Barrow, that she had not understood the meaning of the term "prostitution," and that the sexual relations which she had had with different men had been "affairs" which did not constitute prostitution.

Thereafter, the Board of Immigration Appeals issued a decision denying petitioner's motion, whereupon this action for review was filed.

The grounds for relief claimed by petitioner are:

1. That the order of deportation is not based upon "reasonable, substantial and probative evidence."

2. That the Board of Immigration Appeals erred in denying petitioner's motion to reopen.

*Ground No. 1.* The claim that the order of deportation is not based upon "reasonable, substantial and probative evidence." The two written sworn statements of petitioner, given to Investigator Barrow bear internal evidence that she understood spoken English quite well and understood the meaning of the term "prostitution."

After she had given these two sworn statements, petitioner was granted a continuance of the hearing on May 4, to May 10 to enable her then retained attorney to be present. On May 10, with representation by her own counsel, the above-mentioned hearing before the Special Inquiry Officer was held. During the hearing her attorney was given a 10-minute recess during which to examine both such sworn statements, after petitioner had identified the same, together with a number of handwritten corrections thereto, as having been made by her.

After petitioner's attorney had examined these two statements, and after they were offered in evidence, the following transpired:

By Counsel:

"I would like to * * * I can't object to the introduction into the evidence, I realize that, not on the regular grounds, but I would like to state for the record that I have discussed that with my client, the 2 exhibits that are now in, and she has stated to me that at the time they were made that she was noticeably upset and noticeably confused and that there was a confusion in her mind as to the basic meaning or the legal meaning of prostitution. I would like that on record because I have covered that with her."

By Inquiry Officer to Counsel:

"Of course, you have the right to question her regarding anything in the statements."

By Counsel: "I will, sir, thank you."

(P. 10 of Tr. of Hearing 5/10/60).

However, petitioner did not testify in any attempt to further explain her previous testimony or actions. At this hearing a record of conviction in Beverly Hills Municipal Court, identified by petitioner as correct, and as referring to her, was received in evidence. On cross-examination she explained the Beverly Hills conviction, saying the man whom a friend or hers had asked her to entertain, had disrobed, and she had done so and put on a negligee and then was arrested by the man who turned out to be a police officer, and that she had had no sexual relations with him, and received no money from him. (Tr. 14–15).

For purposes of this opinion, we assume, without deciding, that the record of conviction was insufficient to establish that the offense of which she was convicted was prostitution. There nevertheless was ample evidence from which the Special Inquiry Officer who passed upon her case at the first hearing could reasonably have found that she had engaged in prostitution.

Petitioner argues (a) that the order of deportation must be "based upon reasonable, substantial, and probative evidence" (8 U.S.C.A. § 1252(b)) to support the basic finding, as cause for deportation, that she had been "engaged in prostitution"; and (b) that the term "engaged in prostitution" as used in the statute [4] requires proof that appellant engaged in the "offering of the body to indiscriminate lewdness for hire." [5] We, of course, agree with these premises, but not with the conclusion of alleged insufficiency of the evidence to satisfy these requirements.

Offering or rendering available the use of the body to seven different men, not her husband, in succession over a period of 18 months, on an average of 1 to 3 times per week, by her own admission, for which petitioner received rewards in money or other things of value averaging from $50 to $100 per incident, constituting the major part of her income during that period, is, we feel, sufficiently indiscriminate and sufficiently for hire, even if accompanied by her claimed liking for each person and her expectation of sexual satisfaction, to form a reasonable basis for a finding by the Service that she was engaging in prostitution, especially in the light of her total testimony. Further, even if we might draw a contrary conclusion from the same evidence, we cannot say that the Special Officer was unreasonable in drawing the conclusion that he did.[6]

■■ *Ground No. 2.* Did the Board err in denying the Motion to Reopen? As pointed out in the government's brief, the Board is not a statutory body, but is wholly a creature of regulations issued by the Attorney General. 8 C.F.R. (1961 Cum.Pock.Supp.) § 3.1 et seq. And there is no statute requiring the Board to reopen a deportation hearing or otherwise fixing the conditions upon which a hearing will be reopened. The matter of rehearings appears to be governed by the regulations which provide:

"The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reconsideration or reopening of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written Motion to the Board * * *." 8 C.F.R. (1961 Cum.Pock.Supp.) § 3.2.

In view of our decision, we need not decide here whether the discretionary power to reopen which seems to be granted to the Board is reviewable on an appeal such as this. We assume for purposes of argument, that a ruling denying a motion to the Board for hearing is reviewable for abuse of discretion.

In our view the Motion and affidavit in support of the Motion present no newly discovered evidence. Nor would the substance of that affidavit, even if accepted as true in its entirety and admitted in evidence, offer any new ground for reversal of the Board's ruling on the merits.

In the light of the evidence in the record, the alleged facts proposed to be presented by the affidavit would sustain, not contradict, the conclusions of the Board.

4.  Quoted in Note 2, ante.

5.  Citing Cleveland v. United States, (1946) 329 U.S. 14, 17, 67 S.Ct. 13, 15, 91 L.Ed. 12, which quoted 8 Oxford Eng.Dict. 1497, defining prostitution. Petitioner's brief, however, quotes from only a portion of that definition.

    The Cleveland case, by way of dictum, says:

    "Prostitution, to be sure, *normally* suggests sexual relations for hire." (emphasis added).

Note 3 (329 U.S. 17, 67 S.Ct. 15) cited to this statement makes the following quotation: " 'of women: The offering of the body to indiscriminate lewdness for hire (esp. as a practice or institution); whoredom, harlotry.' 8 Oxford English Dictionary 1497."

6.  See Lundgren v. Freeman (9 Cir., 1962) 307 F.2d 104 opinion by Duniway, Circuit Judge.

The fact that appellant, before the Motion, married a United States citizen is of course not a ground upon which this court can reverse the Board's decision denying the Motion.

The appeal is dismissed.