# Deportation Proceedings of Joseph Patrick Thomas Doherty

The Attorney General reversed the decision of the Board of Immigration Appeals that there was insufficient evidence that the deportation of the respondent to the Republic of Ireland would be prejudicial to the interests of the United States, and remanded the case to the BIA for further proceedings.

June 9, 1988

In re: Joseph Patrick Thomas Doherty (A26–185–231)

### In Deportation Proceedings

Under 8 U.S.C. § 1253(a), an alien is to be deported to a country designated by the alien if that country is willing to accept him "unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States." In this case, the Board of Immigration Appeals ("BIA") ruled that there was insufficient evidence that the deportation of respondent to the Republic of Ireland ("Ireland") was prejudicial to the interests of the United States and accordingly rejected the request of the Immigration and Naturalization Service ("INS") that respondent be deported to the United Kingdom of Great Britain and Northern Ireland ("the United Kingdom"). Pursuant to 8 C.F.R. § 3.1(h)(1)(iii), I granted the INS's request to review the decision of the BIA. For the reasons set forth below, I disapprove the BIA's decision and conclude that it would be prejudicial to the interests of the United States for respondent to be deported to Ireland and that he should be deported instead to the United Kingdom.

## I.

Respondent is a citizen of both Ireland and the United Kingdom. He was convicted in the United Kingdom in 1981 of murder, attempted murder, and possession of firearms and ammunition with intent to endanger life or cause serious injury to property. These charges arose out of an incident in which respondent and other members of the Provisional Irish Republic Army ("PIRA") ambushed a British army convoy. One of the soldiers was killed during the attack. Prior to his sentencing, respondent escaped from prison and fled to Ireland and then to the United States, which he entered illegally in 1982.

Respondent was arrested by the INS in 1983. The United States, acting on behalf of the United Kingdom, instituted proceedings to extradite him to that coun-

1

try. The district court, however, held that his actions involving the ambush of the British army patrol and escape from prison fell within the political offenses exception to the extradition treaty between the United States and England, and thus denied the request for extradition. *In Re Doherty*, 599 F. Supp. 270 (S.D.N.Y. 1984).

Respondent's deportation proceeding had been stayed during the pendency of the extradition litigation. When it resumed, respondent conceded his deportability at a hearing before the immigration judge on the basis of having entered without valid immigration documents, 8 U.S.C. §§ 1251(a)(1), 1182(a)(19), (20), and designated Ireland as the country to which he wished to be deported.[1] INS objected to Ireland as the country of deportation on the ground that deportation there would be prejudicial to the interests of the United States, and contended that he should instead be deported to the United Kingdom. In support of this contention it supplied the immigration judge with newspaper articles and speeches on the general issue of terrorism. Although INS was given a continuance of one week to produce further evidence to support its contention, it failed to submit any additional evidence.

On the basis of this record, the immigration judge held that respondent should be deported to the country he had designated, Ireland, as INS had failed to produce any evidence that deportation to Ireland would be prejudicial to the interests of the United States. INS appealed this decision to the BIA, arguing that respondent's deportation to Ireland would be prejudicial to the interests of the United States. On March 11, 1987, the BIA affirmed the decision of the immigration judge, stating:

> [W]e are unwilling to find that deportation to the Republic of Ireland would be prejudicial to the interests of the United States in the absence of clear evidence to support that conclusion. The Service was granted a continuance to allow it to secure evidence of such interest, but it has produced none.

BIA Decision of March 11, 1987 at 5 ("March Decision").

When it issued this opinion, the BIA was unaware that on March 4 INS had filed a Motion to Supplement the Record or to Remand for Further Proceedings Before the Immigration Judge ("Motion").[2] The Motion contained an affidavit from Associate Attorney General Trott, signed on February 19, 1987, stating that in his judgment the deportation of respondent to Ireland would be prejudicial to the interests of the United States.

---

[1] INS had added several other grounds for deportation, 8 U.S.C. § 1182(a)(9), (10), (27), (28)(F)(ii). These charges deal with criminal conduct, either actual or potential. INS requested that it be allowed to prove these additional charges. The immigration judge declined, holding that since respondent had conceded deportability, there was no point in proving that he was deportable on additional grounds. This holding was affirmed by the BIA. BIA Decision of March 11, 1987 at 3.

[2] INS had filed the Motion with the BIA on March 5, but it was apparently lost or misfiled due to administrative error. BIA Decision of May 22, 1987 at 3.

After the BIA had issued its March Decision, the INS successfully moved the BIA to reopen the appeal for consideration of its Motion. The BIA declined, however, to remand the case to the immigration judge, holding that the affidavit did not constitute previously unavailable evidence as required by BIA's regulations, 8 C.F.R. §§ 3.2, 3.8. BIA Decision of May 22, 1987 at 3–5. In addition, the BIA stated that "the affidavit does not purport to be based upon evidence that respondent's deportation to the Republic of Ireland will be prejudicial to the United States' interests. Rather, it appears to be based only upon the . . . logical inference" that our allies would view respondent's deportation to Ireland as shielding a terrorist from punishment. *Id.* at 5.[3]

## II.

Respondent was notified that the Attorney General would consider only whether respondent's deportation to Ireland would be prejudicial to the interests of the United States and whether, instead, he should be deported to the United Kingdom. Nonetheless, in his memorandum, respondent raises the issue of the Attorney General's authority to review the BIA's decision. Respondent appears to contend that the Attorney General lacks the power to overturn the BIA's decision, particularly if he were to do so after having considered Mr. Trott's affidavit. Given that respondent has raised the issue, it is appropriate, before turning to the merits, to address the scope of the Attorney General's decisionmaking authority in this case.

Section 1253(a), like most other provisions of the immigration law, vests the power to make determinations in the Attorney General personally.[4] That power includes the power to receive evidence, make findings of fact, and decide issues of law. The Attorney General has delegated his decisionmaking authority, in the first instance, to the BIA and the immigration judges.[5] They exercise "such discretion and authority conferred upon the Attorney General by [law] as is appropriate and necessary for the disposition" of the case. 8 C.F.R. §§ 3.1(d)(1), 236.1.

---

[3] Counsel for respondent was notified that the Attorney General would be reviewing the decision of the BIA, and would determine whether the deportation of respondent to Ireland would be prejudicial to the interests of the United States and whether, instead, he should be deported to the United Kingdom. Counsel for respondent was given the opportunity to submit a memorandum addressing the question under review. Counsel for respondent was also informed that the Attorney General would be considering Mr. Trott's affidavit in the course of his review of the BIA's decision, and thus that respondent might wish to respond to the facts and reasoning contained in that affidavit. Counsel for respondent filed a memorandum, as well as a shorter supplemental letter in response to a subsequent letter from INS setting out its views on the case. In my review, I have considered these filings made by counsel for respondent and INS, the record of the proceedings below, Mr. Trott's affidavit, the decision in the extradition proceedings cited in Mr. Trott's affidavit, and a letter from Michael M. Armacost, Undersecretary for Political Affairs at the Department of State, setting forth the Department of State's views regarding the interests of the United States in this case.

[4] *See generally* 8 U.S.C § 1103.

[5] The BIA is entirely a creation of the Attorney General. *See Greene v INS,* 313 F.2d 148 (9th Cir.), *cert. denied,* 374 U S. 828 (1963). Immigration judges receive some of their powers and duties directly from Congress, 8 U.S C § 1252(b), and some by delegation from the Attorney General. *See Lopez-Telles v INS,* 564 F.2d 1302 (9th Cir 1977).

Thus, to the extent that the immigration judges or the BIA have authority to make determinations under section 1253(a), including the authority to receive evidence and make findings of fact, it is because they are exercising, by delegation, the Attorney General's authority.

Although he has delegated his decisionmaking authority in the first instance to the immigration judges and the BIA, the Attorney General has retained the authority to review the decisions of the BIA pursuant to 8 C.F.R. § 3.1(h), and thus has retained final decisionmaking authority. *Id.* § 3.1(d)(2). The regulations setting out his review authority do not expressly or by implication circumscribe the Attorney General's statutory decisionmaking authority. Thus, when the Attorney General reviews a case pursuant to 8 C.F.R. § 3.1(h), he retains full authority to receive additional evidence and to make de novo factual determinations.[6]

Accordingly, there can be no doubt that the Attorney General has authority to consider evidence such as Mr. Trott's affidavit even though that evidence was not considered by the BIA or the immigration judge. Nor can there be any doubt that the Attorney General has authority to reach a decision different from that of the BIA. In any event, in this case respondent was notified that the Attorney General would consider Mr. Trott's affidavit and was given an opportunity to respond on the merits to the facts and reasoning contained in it, an opportunity which respondent has exercised.[7]

## III.

Respondent's actions and his criminal convictions were established by the district court in the extradition proceeding. *In Re Doherty*, 599 F. Supp. 270 (S.D.N.Y. 1984). Respondent did not contest the factual findings of the court; indeed, he testified at length as to the events giving rise to his criminal conviction. *Id.* at 272. Respondent's testimony and his criminal convictions as established in the extradition proceeding are summarized in the opinion of the district court:

---

[6] Moreover, despite the contention of respondent, the regulations governing the BIA are not applicable to the Attorney General. Thus, even after having rendered a decision, if the Attorney General was presented with a motion to reconsider, or a motion to remand as the BIA was, he would not be governed by 8 C.F.R. §§ 3.2 and 3.8 in deciding that motion.

[7] On April 21, 1988, respondent filed a motion requesting that the Attorney General, and any individual to whom he might delegate decisionmaking authority, be rescued from an adjudicative role in these proceedings. Respondent does not allege any personal bias as the basis for this motion. Rather, in essence the motion is based on the allegation that the history of the extradition litigation and these deportation proceedings demonstrates that the Justice Department is persecuting respondent by advancing improper legal theories and denying him procedural rights. This does not appear to be, in fact, a "recusal" motion; rather, the motion appears to me to be a repetition of legal arguments that respondent has made in these proceedings and elsewhere.

In any event, respondent's allegation is without foundation. The Justice Department has in no way persecuted respondent by advancing improper legal theories or denying him procedural rights. In this connection, I would note that, in an interim review of these proceedings, the United States Court of Appeals for the Second Circuit has already rejected a number of the claims that respondent makes in this motion. In particular, it held that it was "abundantly clear" that the INS had a reasonable basis for appealing the adverse decision of the immigration judge, and it also rejected the argument that the determination of the district court that respondent was not extraditable in some way precluded his deportation *Doherty v. Meese*, 808 F.2d 938, 942, 944 (2d Cir. 1986). Accordingly, respondent's motion is denied.

4

Respondent Doherty was a member of the provisional Irish Republican Army ("PIRA"). On May 2, 1980, at the direction of the IRA, Doherty and three others embarked upon an operation "to engage and attack" a convoy of British soldiers.

Doherty testified that he and his group took over a house at 371 Antrim Road in Belfast, and awaited a British Army convoy. Some three or four hours later, a car stopped in front of 371 Antrim Road and five men carrying machine guns emerged. These men, members of the Special Air Service of the British Army ("SAS"), and Doherty's group fired shots at each other.

In the exchange of gunfire Captain Herbert Richard Westmacott, a British army captain, was shot and killed. Doherty was arrested, charged with the murder, among other offenses, and held in the Crumlin Road prison pending trial. On June 10, 1981, after the trial was completed but before any decision by the Court, Doherty escaped from the prison along with seven others. He was convicted in absentia on June 12, 1981 of murder, attempted murder, illegal possession of firearms and ammunition, and belonging to the Irish Republican Army, a proscribed organization.

599 F. Supp. at 272 (citations to transcript omitted).[8]

The facts established in the extradition proceedings show that respondent killed a member of the British army. While the victim was a soldier rather than a civilian, the use of violence against a democratic society is unjustified irrespective of the identity of the victim. It is unjustified for the fundamental reason that in a democratic society the political system is available for peaceful redress of grievances. Given the availability of peaceful alternatives, there is no legitimate reason to resort to violence against any person whether or not that person has an official status within the State.[9]

The availability of such alternatives cannot be questioned here. While in some cases the question whether a society is democratic would be a difficult one, it is clear that the United Kingdom (of which Northern Ireland is a part) is a democratic society. Its citizens have fundamental political rights and are fully able to pursue their political goals through the electoral process.

---

[8] Mr. Trott's affidavit states that respondent has committed certain additional crimes. Respondent states that he has not committed such crimes. I do not consider it necessary to resolve this factual dispute The record of the extradition proceeding establishes the fact that respondent has committed serious crimes. I base my decision on the facts established in the extradition proceedings, and do not consider it relevant whether or not respondent has committed additional crimes.

[9] This, of course, is not to say that the United States may not also condemn acts of violence in a non-democratic state. In particular, it is the policy of the United States to condemn acts of violence directed against non-combatants even by those who are otherwise legitimately seeking to oppose a non-democratic government.

It is the policy of the United States that those who commit acts of violence against a democratic state should receive prompt and lawful punishment. The factual premise of Mr. Trott's affidavit is that this policy would be prejudiced if respondent were deported to Ireland because, while he could be prosecuted there for any crimes he committed in connection with his escape from prison, he could not be prosecuted there or extradited to the United Kingdom for murder or the other offenses he committed in connection with the ambush of the British army patrol. Trott affidavit at 4–5, ¶¶ 9, 11. This factual premise is challenged by respondent, who asserts that he would be subject to extradition from Ireland to the United Kingdom, apparently after having served any sentence Ireland would impose with respect to his escape from prison in the United Kingdom. Brief of Respondent-Appellee Joseph Patrick Thomas Doherty To The Attorney General at 24–25 (Jan. 8, 1988).

Respondent apparently bases his statement that he would be subject to extradition from Ireland to the United Kingdom on the Extradition Act recently promulgated in Ireland.[10] Assuming for purposes of this decision that Irish law supports respondent's contention, it would nonetheless be prejudicial to the interests of the United States for respondent to be deported to Ireland rather than the United Kingdom for two independent reasons. First, respondent has committed serious crimes in the United Kingdom and has received a prison sentence in the United Kingdom. As indicated above, it is the policy of the United States that those who commit acts of violence against a democratic state should receive swift and lawful punishment, and it is thus in the interests of the United States that respondent serve his sentence in the United Kingdom. Deporting respondent to Ireland would require the United Kingdom to invoke Irish law to secure respondent's return to the United Kingdom. It is in our interest that he be sent directly to the United Kingdom instead.

Second, Michael H. Armacost, the Undersecretary for Political Affairs at the Department of State, has communicated to me the views of the Department of State that a decision to deport respondent to Ireland rather than the United Kingdom would be injurious to our relations with the United Kingdom. Mr. Armacost states:

> We note in particular that the United Kingdom is the only State which has requested Doherty's extradition from the U.S., and that the denial of that request by our courts met with great disappointment. Additionally, Her Majesty's Government has repeatedly and vigorously expressed its desire that the United States effect Doherty's deportation to the United Kingdom; to our knowledge, no other State has made a competing request. Therefore, in our view, the government and people of the United King-

---

[10] I note that the affidavit of counsel attached to the Motion of Respondent to Reopen or Reconsider (Dec. 3, 1987), which, as discussed in the next section of this opinion, was referred to me by the BIA, states that the Extradition (European Convention on the Suppression of Terrorism) Act went into effect in Ireland on December 1, 1987, and that it changed the Irish law governing deportation such that respondent would now be subject to extradition from Ireland to the United Kingdom. Affidavit of Mary Boresz Pike (Dec. 3, 1987) at ¶¶ 25–27

dom would not welcome a decision by the Attorney General to deport Doherty elsewhere.

Moreover, the United Kingdom is the United States' closest partner in our counter-terrorism efforts. Failure to return Doherty to the United Kingdom could undermine HMG['s] confidence in the ability of the United States to cooperate in counter-terrorism efforts of special bilateral concern.

Finally, given the strength of British views on this issue, we believe that an Executive Branch determination not to deport Doherty to the U.K. might well prejudice broader aspects of our bilateral relationship beyond cooperation in counter-terrorism activities.

I certainly agree with the State Department that a decision to deport respondent to Ireland rather than the United Kingdom would be injurious to our relations with the United Kingdom.[11]

For the foregoing reasons, I conclude that deportation of respondent to Ireland would be prejudicial to the interests of the United States and that he should be deported instead to the United Kingdom. Accordingly, I disapprove the decision of the BIA affirming the order of the immigration judge that respondent be deported to Ireland rather than the United Kingdom.[12]

---

[11] Respondent points to the fact that he was held unextraditable under the United States-United Kingdom Extradition Treaty Brief of Respondent-Appellee at 3–4. Deportation proceedings such as these, however, are independent from, and governed by a different standard than, extradition proceedings. *Doherty v. Meese*, 808 F.2d 938, 944 (2d Cir. 1986). Application of the extradition treaty involves an interpretation of the reciprocal legal obligations created by that treaty; the application of 8 U.S.C. § 1253(a) involves a determination of the interests of the United States — potentially a much broader inquiry Thus, the fact that respondent's actions were held to fall within the political offenses exception to the then applicable extradition treaty between the United States and the United Kingdom does not preclude a finding that it would be prejudicial to the interests of the United States for respondent to be deported to Ireland.

Respondent also asserts that he has a substantive right to be deported to the country he designates, and that denial of that right would violate his constitutional right to due process and equal protection Brief of Respondent-Appellee at 18–23. This latter claim is based on his assertion that he is the first alien whose country of designation has been rejected Respondent is, of course, correct that 8 U S.C. § 1253(a) authorizes an alien to designate a country of deportation, but he fails to acknowledge that the statutory authorization is subject to the authority of the Attorney General to reject the designated country. Nor has he been singled out unconstitutionally. In the analogous area of decisions whether or not to exercise prosecutorial discretion, a decision to prosecute is only unconstitutional if it is based on a characteristic such as race or religion *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *Wayte v. United States*, 470 U.S. 598, 608 (1985). Respondent does not assert that he has been singled out based on such a characteristic, nor would there be any grounds for him to do so.

[12] My decision on the merits is based on the evidence and reasoning set forth in Part III of this opinion. I express no opinion regarding the BIA's decision, pursuant to 8 C.F.R. §§ 3.2 and 3.8, to deny INS's Motion to Supplement the Record or to Remand for Further Proceedings Before the Immigration Judge I do, however, disapprove of the BIA's statement that Mr. Trott's affidavit consisted solely of "logical inferences" and thus was not "evidence." BIA Decision of May 12, 1987 at 5. The judgment under 8 U.S.C. § 1253(a) whether an alien's designation of a country of deportation would be prejudicial to the interest of the United States "must be based on an analysis of the impact of a particular deportation on United States' interests viewed as a whole by a politically responsible official " *Doherty v Meese*, 808 F.2d at 943. Such an analysis is likely to take the form of an affidavit such as Mr. Trott's. Indeed, it is difficult to see what other kind of evidence could be offered. Certainly, the INS

7

# IV.

On December 3, 1987, respondent filed a motion with the BIA requesting an order reopening the deportation proceedings, and remanding the case to the immigration judge for a hearing on respondent's claims for asylum, withholding of deportation, and for redesignation of country of deportation. It appears that respondent's arguments are twofold: first, that the enactment of the Extradition Act in Ireland has changed the facts upon which he based his earlier concession of deportability and his waiver of other legal claims; and second, that because the prolongation of the administrative proceedings prevented him from being deported to Ireland prior to the entry into force of this law, he should be allowed now to revoke his earlier concession and waiver.

On February 2, 1988, the BIA issued a per curiam opinion referring respondent's motion to the Attorney General. BIA decision of February 2, 1988 at 2. In its decision, the BIA stated it was taking this action because it was unclear whether it had authority to consider the motion while an appeal was pending before the Attorney General. Accordingly, the decision referred the motion to the Attorney General "for such action as he deems appropriate." *Id.*

I have concluded that it is appropriate to remand this motion to the BIA for its decision. I express no opinion as to how the BIA should decide the motion, or as to how the immigration judge or the BIA should make any subsequent determinations in the event that all or part of that motion were to be granted. In light of the length of time that the respondent's deportation proceedings have already consumed, however, I do recommend that the BIA give priority on its docket to this motion to the extent that, in the BIA's judgment, this can be done consistent with any applicable procedural rules and the reasonable requirements of the parties.

# V.

For the foregoing reasons, the decision of the BIA is disapproved, and the case is remanded to the BIA for proceedings consistent with this opinion.

EDWIN MEESE III
*Attorney General*

---

[12] (. . . continued)
should not be required, for instance, to offer the affidavits of foreign government officials stating what the official position of their governments would be regarding a particular deportation, and stating whether they will lessen their cooperation with the United States as a result of the deportation proceeding.

Finally, I approve of the decision of the BIA that the immigration judge, in the circumstances of this case, did not abuse his discretion in refusing to let the INS prove additional charges. This refusal in no way impaired the INS's ability to establish that it would be prejudicial to the interests of the United States for respondent to be deported to Ireland. As the BIA stated: "Deportability and designation of the country for deportation are separate and distinct issues." March Decision at 5. Once deportability is established on any ground, as it was here, the INS can proceed to establish its objections to the country of designation under 8 U.S.C. § 1253(a). Of course even in circumstances similar to those here, the INS must be given the opportunity to prove when necessary additional *facts* that are relevant to its objection to a country of designation, but that need not be done by proving additional grounds of deportability.

# OPINIONS

OF THE

# OFFICE OF LEGAL COUNSEL