Julian Calero **SALAZAR**, Petitioner,

v.

**R.M. REICH, Warden, etc.,
et ano., Respondents.**

**No. 96 Civ. 7454 (LAK).**

United States District Court,
S.D. New York.

Oct. 9, 1996.

Michael E. Deutsch, New York City, for Petitioner.

Pierre M. Gentin, Assistant United States Attorney, New York City, Mary Jo White, United States Attorney, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The principal question presented by this petition for a writ of habeas corpus is whether petitioner, a Peruvian national who entered the United States illegally in 1991 and who is wanted in Peru on charges including terrorism and murder as an alleged member of the Shining Path guerrilla movement, is entitled to release on bond pending the determination of his application for political asylum and the deportation proceeding pending against him. Petitioner's request for bond initially was granted by an Immigration Judge ("IJ") and subsequently stayed by the Board of Immigration Appeals ("BIA"). The Court concludes that there is no basis at this time for directing petitioner's release from custody.

### Facts

Petitioner entered the United States illegally on August 8, 1991 and subsequently has resided in Wilton, Connecticut, where by all accounts he has led a law-abiding and productive life. On December 19, 1994, he applied for political asylum, thereby bringing himself to the attention of the Immigration and Naturalization Service ("INS"). His application stated in substance that his life would be in imminent danger were he to return to Peru because the Peruvian government falsely had accused him and his family of being members of the Shining Path. Indeed, it appears that petitioner's wife, Fresia Calderon Garate, was jailed and tortured for

seven months in 1994 on charges of terrorism.[1]

Petitioner apparently remained at liberty pending the asylum and deportation proceedings[2] until May 30, 1996, when he was arrested by the INS on an administrative warrant upon his arrival at the INS office for a hearing on his asylum application. On the following day, the United States Attorney's office, acting pursuant to an extradition request lodged by the government of Peru, filed a complaint and obtained a warrant for petitioner's arrest, which was executed on June 3, 1996. Petitioner thereupon was transferred to the custody of the United States Marshal.

On August 23, 1996, the United States Attorney's office moved to dismiss the complaint against petitioner in view of its conclusion that the government of Peru had failed to establish probable cause to support petitioner's extradition. Petitioner subsequently has been held at the Metropolitan Correctional Center in the custody of the INS.

Petitioner applied for release on bond pending a determination of his deportability, and a hearing was held on August 30, 1996. The government opposed release, contending that petitioner is a danger to the community and that there are warrants of arrest outstanding against him in Peru, apparently as a result of an incident in which petitioner allegedly participated in an ambush that resulted in the death of six Peruvian police officers. The petitioner denied the charges made against him in Peru, contending among other things that he had been in the United States when the alleged ambush took place and that innocent people routinely are accused falsely of subversive activities in Peru and killed or imprisoned without legal recourse.

On September 6, 1996 the IJ, after considering the Country Conditions Report on Peru issued by the State Department, ordered petitioner released on bond of $25,000 and denied the INS' application for a stay of the

1. The petition alleges that petitioner's wife was exonerated of the charges by the Superior Court of Lima, Peru, that she then fled to Denmark, and that new charges based on the same facts were lodged against her after her departure.

2. Petitioner has conceded his deportability. He seeks political asylum, withholding of deportation, or voluntary departure. (Return ¶ 3)

order pending appeal. (Pet.Ex. 8) When petitioner's family sought to post bond later that day, however, the INS delayed. INS Appellate Counsel applied to the BIA for a stay of the order admitting petitioner to bond, which was issued on the same date. The petition claims that the stay application was made *ex parte*, although it acknowledges that petitioner's counsel apparently got wind of what was going on and had a telephone conversation with a BIA clerk. The INS claims that petitioner's counsel was heard by telephone. (Return ¶ 4 & Ex. A, at 001) Nothing ultimately turns on resolution of this dispute, however.

The IJ filed an extensive opinion setting forth her findings and conclusions on September 23, 1996. (Pet.Ex. 1) The IJ concluded that the evidence of petitioner's involvement in the alleged ambush was "not persuasive, reliable [or] probative," noting that the evidence against him consisted in substantial measure of statements from prisoners accused of participating in the ambush who were "beaten and tortured during interrogation ..." She concluded also that petitioner was not a flight risk. Given the fact that the written decision was not completed until September 23, 1996, more than two weeks after the BIA stayed the IJ's order, the BIA obviously did not have the benefit of the IJ's reasoning or findings.

## Discussion

The petition presents three claims for relief. The first contends that petitioner's continued detention on bond is arbitrary, capricious and without reasonable foundation. The second asserts that the BIA's issuance of the stay without a hearing or review of the IJ's decision, as well as its failure to determine the government's appeal from the IJ's order on a timely basis, was arbitrary, capri-

cious and a violation of petitioner's right to due process of law. The third contends that the failure to release petitioner on bond is unreasonable and improper, either standing alone or taken together with the Attorney General's failure to proceed with "reasonable dispatch" in hearing petitioner's political asylum claim.

### Release on Bond Pending the Deportation and Asylum Proceeding

■ Petitioner's first and third claims overlap to the extent that both assert in substance that petitioner is entitled to release on bond pending the determination of his asylum application. It would be inappropriate, however, for the Court to reach the merits of these claims.

■ While 28 U.S.C. § 2241, which authorizes the district courts to issue writs of habeas corpus, does not in terms so provide, it long has been established that an applicant for the writ first must exhaust his administrative remedies. *Gonzalez v. Perrill*, 919 F.2d 1, 1–2 (2d Cir.1990). Petitioner began the process by applying for bond and, indeed, prevailed at the first stage. Bond decisions by IJs, however, are reviewable by the BIA. 8 C.F.R. § 3.1(b)(7). The BIA conceivably may agree with the IJ's decision in this case, in which case petitioner presumably would be released. As long as that avenue remains before petitioner, he has not exhausted his administrative remedies and the petition does not lie.[3]

### Release on Bond Pending Determination of the Appeal to the BIA

Petitioner's second claim goes to a related but quite distinct issue. He asserts that the BIA acted improperly in staying the IJ's bond order.

---

3. The Court acknowledges that excessive delay or other unusual circumstances might render an administrative remedy unavailable or ineffective as a practical matter, in which case strict compliance with the exhaustion requirement would be inappropriate. *See* 8 U.S.C. § 1252(a)(3) (permitting review of bond determination "upon a conclusive showing ... that the Attorney General is not proceeding with ... reasonable dispatch ..."); *United States ex rel. Chung v. Thornburgh*, 749 F.Supp. 93 (S.D.N.Y.1990). In view of the fact that it has been only 33 days since the IJ's order was issued and 132 days since petitioner's arrest, there is no basis for reaching such a conclusion at this point. *See United States ex rel. Chung*, 749 F.Supp. at 97 (57 days not "unreasonable given institutional limitations [of INS].") Nor would it be appropriate to measure the delay, for purposes of Section 1252(a)(3), from the start of the deportation proceedings in view of the fact that petitioner was at liberty until May 30, 1996.

In considering whether a habeas petitioner has exhausted his or her administrative remedies, it is important to focus on the precise issue as to which the petitioner seeks judicial relief. *See United States v. LaVallee,* 312 F.2d 308, 309 (2d Cir.1963). In this case, petitioner argues not only that he has a right to bond pending the resolution of the asylum-deportation proceeding, but that he is entitled to be released pending the government's appeal from the IJ's decision in his favor on the bond application. On that question, the BIA already has spoken.[4] In consequence, the Court will consider the merits of the BIA's action.

█ The threshold question is whether the BIA is empowered to stay, pending appeal, orders of IJs that grant or deny bond. To those steeped in the superficially analogous powers of the federal courts of appeals, the answer seems obviously to be affirmative. On consideration of the quite different nature of the BIA, however, the problem is less easily resolved, but nonetheless yields the same conclusion.

8 C.F.R. § 242.2(c)(2) provides in substance that an officer executing an administrative arrest warrant in connection with a deportation proceeding initially shall determine whether the respondent will be held in custody pending the completion of the proceeding. After that initial determination, however, the arrestee may apply to an IJ for release. *Id.* § 242.2(d). The decision of the IJ may be appealed, either by the arrestee or the INS, to the BIA. *Id.;* 8 C.F.R. §§ 3.1(b)(7), 242.2(d).

█ Section 3.6 of the regulations provides that "the decision in any proceeding ... from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal ... [or] while an appeal is pending" *"[e]xcept as provided in § 242.2 of this chapter ..."* 8 C.F.R. § 3.6 (emphasis added). Section 242.2(d), which

authorizes IJs to rule on bond applications, provides that "[t]he filing of an appeal from a determination of an [IJ] ... shall not operate to delay compliance, during the pendency of the appeal, with the custody directive from which the appeal is taken...." *Id.* § 242.2(d). Thus, the regulations are crystal clear that the filing of an appeal by the INS from an order releasing a respondent pending a deportation proceeding, unlike any other type of appeal to the BIA, does not *of its own force* stay the order.

This of course does not answer the question whether *the BIA* has the power to stay a custody determination pending appeal. A statutory or regulatory framework contemplating appellate review of initial determinations might well provide that (1) the taking of an appeal itself stays enforcement of the order appealed from, (2) orders appealed from remain in effect pending appeal in all cases, or (3) the forum from or to which an appeal is taken may stay the effect of the order appealed from in an appropriate case. *Compare, e.g.,* N.Y. CPLR § 5519(a), subd. 1 (appeal by state or political subdivision stays order appealed from), *with id.* § 5519(c) (court from or to which appeal taken may issue stay). Resolution of the question before the Court therefore requires close attention to the statutory and regulatory structure defining the powers of the BIA.

█ Most powers relating to immigration matters are vested by statute in the Attorney General of the United States. 8 U.S.C. § 1103(a). The Attorney General in turn may delegate her power as she sees fit. *See, e.g., Johns v. Department of Justice,* 653 F.2d 884, 889 (5th Cir.1981). In order to facilitate the discharge of her statutory obligations, she has created the BIA, which has no statutory basis, by regulation. *Greene v. INS,* 313 F.2d 148 (9th Cir.), *cert. denied,* 374 U.S. 828, 83 S.Ct. 1869, 10 L.Ed.2d 1052 (1963). In consequence, the BIA's power is limited to that granted to it by the Attorney

---

4. The government contends that petitioner should be required first to raise before the BIA his contention that the BIA lacks authority to stay a bond order pending appeal. The government, however, points to no mechanism for doing so at this point, and the BIA evidently long has issued such stays. Keeping in mind that the

exhaustion doctrine requires exhaustion of remedies rather than petitioners, this uncertainty should be resolved in favor of petitioner. Moreover, doing so does no violence to the Board's prerogatives in view of the Court's ultimate conclusion that the Board exercised power conferred upon it by the Attorney General.

General, and it is powerless to act in any matter not enumerated in the regulations. 1 CHARLES GORDON ET AL., IMMIGRATION LAW AND PROCEDURE § 3.05[3], at 3–54 (rev. ed. 1996).

There is nothing in the regulations that create the BIA or set forth its powers that expressly confers upon it the power to stay a bond determination by an IJ. The question is whether such a power properly may be inferred.

Section 3.1(d)(1) of the regulations provides in relevant part:

> "Subject to any specific limitation prescribed by this chapter, in considering and determining cases before it as provided in this part the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." 8 C.F.R. § 3.1(d)(1).

Because the Attorney General is vested with the statutory authority to grant or deny release on bond in deportation hearings, 8 U.S.C. § 1252(a)(1), the government argues that the authority to stay a release order necessarily was conferred on the BIA by this provision.

The language of Section 3.1(d)(1) suggests that the BIA impliedly was granted the power to stay release orders. The regulation empowers the BIA to exercise the Attorney General's powers "in considering and determining cases before it" to the extent doing so "is appropriate and necessary for the disposition of the case." The "case" before the BIA is the appeal from the bond determination of the IJ. The term "necessary," from the very inception of American law, has been interpreted liberally. As Chief Justice Marshall stated in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413, 4 L.Ed. 579 (1819), synonyms for "necessary" include "convenient, or useful." Ensuring the continued presence of the alien during his bond appeal is, obviously, more than a matter of mere convenience in the disposition of a case before the BIA. Allowing IJs alone to exercise power over alien detentions during the bond appeal

process would threaten the BIA's explicit power over bond determination appeals. Should an alien escape in those cases in which the BIA would have reversed an IJ's decision admitting an alien to bond, its power to determine the custodial status of the alien pending deportation proceedings would be rendered a functional nullity. Accordingly, there is considerable strength to the view that the power to stay orders admitting aliens to bond is implicit in the BIA's power to hear and determine appeals from such orders. *Cf. Doherty v. Meese*, 808 F.2d 938, 941–42 & n. 3 (2d Cir.1986) (BIA empowered to exercise authority necessary to dispose of appeal presenting novel issue of Attorney General's right to reject country of deportation designated by alien); *United States v. Huckabay*, 707 F.Supp. 35, 37 (D.Me.1989) (statute permitting government appeal from order releasing criminal defendant on bail implicitly confers on reviewing court power to stay order pending appeal).

The Attorney General's acquiescence in the BIA's issuance of such stays further demonstrates her approval of the practice. Just as difficult separation of powers delegation questions may be resolved, at least in part, by consistent conduct over time, *Youngstown Co. v. Sawyer*, 343 U.S. 579, 613, 72 S.Ct. 863, 898, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring), so may questions of subdelegation. It appears that the BIA long has exercised its right to stay IJ bond determinations[5] without the Attorney General having altered the regulations or, as far as the record discloses, disapproving of the practice. The Court reasonably may infer that this inaction on her part express approval of the practice *sub silentio*.

Courts usually accord considerable deference to government agencies' interpretations of the statutes they administer. *E.g., Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Good Samaritan Hospital Regional Medical Center. v. Shalala*, 85 F.3d 1057, 1060 (2d Cir.1996); *Rye Psychiatric Hospital Center, Inc. v. Shalala,*

---

5. The Court of Appeals referred, without comment, to the issuance of such a stay in *Doherty v.*

*Thornburgh*, 943 F.2d 204, 206 (2d Cir.1991).

52 F.3d 1163, 1168 (2d Cir.1995). Although the present case concerns a subdelegation from the Attorney General to the BIA, the rationale for judicial deference remains the same. Gaps in explicit internal delegations of administrative authority, such as the lack of an explicit grant to the BIA of power to stay bond determinations, often may be ascribed to "inadequate expertise, inadequate time, inadequate foresight." 1 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 3.3, at 112 (3rd ed. 1994). Absent persuasive evidence that the lack of an explicit grant of such authority reflects an intention to withhold such power, the Court will defer to the BIA's not unreasonable view that the power has been delegated to it.

*The Merits of Salazar's Petition*

■ As the government has demonstrated that the BIA may exercise its power to issue a stay in an appropriate case, the Court must determine whether the BIA's action in doing so here violated petitioner's rights and thus warrants relief. The standard for making such determinations with regard to denials of bail pending the outcome of deportation proceedings is found in *United States ex rel. Potash v. District Director*, 169 F.2d 747 (2d Cir.1948), and its progeny. Subsequent to an INS decision to deny bond, a habeas corpus writ releasing petitioner must "demonstrate [by] a clear and convincing showing that the decision against him was without a reasonable foundation." *Id.* at 751.

**6.** The Court is satisfied also that the BIA did not violate petitioner's procedural due process in granting the stay, even assuming that it acted *ex parte.*

Granting petitioner's right to procedural due process in the determination of the stay application merely raises the question whether he received all the process that was due in the circumstances. Under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court must consider not only petitioner's stake in the matter but also the government's interest, including the burdens associated with a full hearing and the value that would accrue from additional procedures. *Id.* at 335, 96 S.Ct. at 903; *Perales v. Reno*, 48 F.3d 1305, 1313 (2d. Cir. 1995); *Irwin v. City of New York*, 902 F.Supp. 442, 448–49 (S.D.N.Y.1995).

While the temporary nature of a stay urges, if anything, heightened deference to the BIA's determination, the Court concludes that the petition must be denied even if the "reasonable foundation" standard is applied.[6] Despite the fact that petitioner apparently has a cogent case for political asylum, the Board was entitled to conclude that he presents a sufficiently substantial risk of flight to justify continued detention pending determination of the INS' appeal. Should petitioner be deported to Peru, he is likely to face a long term of imprisonment or death at the hands of the Peruvian authorities. Indeed, the threat of such treatment is the basis of his asylum application. The Board cannot be said to have acted capriciously in concluding that such severe potential penalties, whether products of justice or tyranny, could serve as an impetus for flight, thus providing the requisite "reasonable foundation" for its limited action in staying the bond order.

*Conclusion*

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

SO ORDERED.

The question before the BIA on September 6, 1996 was whether petitioner should have been released that day. Because of the possibility of flight, the government had a considerable interest in an extremely expedited proceeding. While petitioner's liberty interest was and is quite substantial, his interest in avoiding continued detention for a brief period was tempered by the interim nature of the stay. Moreover, if petitioner in fact was not heard by the BIA on the stay application, the Court is confident that the BIA would entertain a motion by petitioner to dissolve the stay on the ground that its issuance was improvident, thus affording him a prompt and effective post-deprivation hearing. Even if he was heard, the BIA well could be obliged to reconsider the continuation of the stay on proper motion in the event it does not hear and determine the appeal promptly.