Terry Winfield KELLMAN, Petitioner,

v.

The DISTRICT DIRECTOR, UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, United States Department of Justice, New York, New York, Respondent.

No. 90 Civ. 4620 (RWS).

United States District Court,
S.D. New York.

Nov. 6, 1990.

Terry Winfield Kellman, pro se.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Timothy MacFall, Sp. Asst. U.S. Atty., of counsel), for respondent.

## OPINION

SWEET, District Judge.

Terry Winfield Kellman ("Kellman") has petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Kellman is currently being held under detention by the Immigration and Naturalization Service ("INS") while awaiting the outcome of deportation hearings. He has challenged the constitutionality of Section 242(a)(2) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1252(a)(2),[1] under which he has been denied the opportunity for a bail hearing. For the following reasons, the statute is held to be unconstitutional and the writ will issue unless the required hearing is held.

## THE FACTS

Kellman, a native of Barbados, West Indies, was admitted to the United States as a permanent resident alien in 1980. For the past ten years, Kellman has lived and worked in New York City. In January, 1989, Kellman pled guilty in New York State Supreme Court to one count of attempted criminal sale of a controlled substance in the third degree in violation of

---

1. That section provides, in pertinent part: The Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction ... [and] *the Attorney General shall not release such felon from custody.* (emphasis added)

§§ 110.00 et seq. and 220.39 of the New York Penal Law. Following his plea, Kellman was sentenced to a prison term of one to three years.

Kellman was paroled from state custody in March of this year, at which time he was arrested by the INS and held for deportation pursuant to sections 241(a)(4)(B) and 241(a)(11) of the Act.[2] The INS claimed that Kellman's state criminal conviction satisfied the "aggravated felony" requirement of § 241(a)(4)(B). Initially, Kellman was detained without bond, and although a bond redetermination hearing was later held, the Immigration Judge who presided over that hearing denied Kellman's petition for release based solely on § 242(a)(2) and its requirement that "the Attorney General shall not release from custody" any aggravated felon awaiting deportation.

Kellman's original petition for habeas corpus relief under 28 U.S.C. § 2241 challenged only the INS's determination that he was an "aggravated felon" within the meaning of the INA. While Kellman conceded that his state conviction could form a basis for deportation under § 241(a)(11), he argued that he should not have been detained without bail under § 242(a)(2) while awaiting the deportation decision. After the government had responded to this argument, Kellman, through a letter to the court, raised the question of the constitutionality of § 242(a)(2). The government was directed to respond to this new claim, and the issue was fully submitted on October 5, 1990.

## DISCUSSION

### Aggravated Felony

■ Kellman challenges the INS determination that he is an aggravated felon,

because he was convicted of violating a state narcotics law rather than the Controlled Substance Act. However, Kellman does not assert that he could not have been prosecuted under federal law for his behavior. The state statute which he was convicted of attempting to violate, New York Penal Law § 220.39 is substantially similar to 21 U.S.C. § 841(a)(1), which makes it a federal crime to "knowingly or intentionally ... distribute, or dispense, or possess with intent to ... distribute, or dispense a controlled substance." Although Kellman was not in fact convicted of violating the Controlled Substance Act, his conduct was "punishable under" that statute, and thus constituted a drug trafficking crime qualifying him as an aggravated felon under the INA. *See Leader v. Blackman*, 744 F.Supp. 500, 504 (S.D.N.Y.1989) (attempted violation of same New York law constituted aggravated felony under INA); *In re Barret*, No. A37–213–802 (Board of Immigration Appeals Nov. 7, 1989) (same result under comparable Maryland narcotics law).

### Constitutionality of § 242(a)(2)

■ Recently, a number of courts have addressed the issue of whether § 242(a)(2)'s denial of bail to aggravated felons awaiting deportation offends the Constitution. In *Davis v. Weiss*, 749 F.Supp. 47 (D.Conn.1990), *Morrobel v. Thornburgh*, 744 F.Supp. 725 (E.D.Va. 1990) and *Eden v. Thornburgh*, No. 90–1473–CIV–KEHOE (S.D.Fla. July 23, 1990) the statute was held to be a valid exercise of Congress' broad power to regulate the admission and exclusion of aliens. However, in five other decisions, *Joe v. INS*, No. 90–12313–Z–20, 1990 WL 167457 (D.Mass. Oct. 26, 1990); *Paxton v. INS*, 745 F.Supp. 1261 (E.D.Mich.1990); *Aguno-*

---

**2.** Section 241(a) provides that

Any alien in the United States ... shall, upon order of the Attorney General, be deported who—
(4)(B) is convicted of an aggravated felony at any time after entry;
(11) ... at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance.

8 U.S.C. § 1251(a).

Section 101(a)(43) of the INA defines "aggravated felony" as including "any drug trafficking crime as defined in [18 U.S.C. § 924(c)(2) ] ... or any attempt or conspiracy to commit any such act, committed within the United States." 8 U.S.C. § 1101(a)(43).

Finally, 18 U.S.C. § 924(c)(2) defines a drug trafficking crime as including "[a]ny felony punishable under the Controlled Substance Act [21 U.S.C. § 801 *et seq.*]."

*bi v. Thornburgh,* 745 F.Supp. 533 (N.D.Ill. 1990); *Leader v. Blackman, supra,* 744 F.Supp. 500 (S.D.N.Y.1990) and *Chao Yang v. INS,* 3–90–CV–300 (D.Minn. June 27, 1990), § 242(a)(2) was found to violate the procedural and substantive due process rights of alien detainees. On balance, the analysis of the latter cases seems more persuasive, and where relevant, the reasoning of *Leader* is hereby adopted.

In *Davis, Morrobel,* and *Eden,* § 242(a)(2) was found to be constitutional based on the courts' use of a relaxed standard of review derived from an admittedly long line of Supreme Court cases involving challenges to immigration statutes. Primary among these is *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), in which the Court reaffirmed the principle that "congressional determinations [in immigration matters] are subject only to limited judicial review." *Id.* at 795–96 n. 6, 97 S.Ct. at 1479–80 n. 6. However, *Fiallo* recognized "a limited judicial responsibility under the Constitution even with respect to the power of Congress to regulate the admission and exclusion of aliens." *Id.* at 793 n. 5, 97 S.Ct. at 1478 n. 5. Moreover, the *Fiallo* Court relied heavily on *Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954), in which Justice Frankfurter specifically stated

> Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. *In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process.*

347 U.S. at 531, 74 S.Ct. at 743 (quoted in *Fiallo,* 430 U.S. at 792–93 n. 4, 97 S.Ct. at 1478 n. 4) (emphasis added).

Thus while it is appropriate to accord a significant degree of deference to Congress' decision to deport immigrants in Kellman's position, the same deference is not mandated when examining the way in which that deportation is accomplished. *See Paxton,* 745 F.Supp. at 1265.

The appropriate standard for a determination as to whether or not the statute violates Kellman's rights under the Due Process clause of the Fifth Amendment is set forth in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which analyzed the constitutionality of the pretrial detention provision of the Bail Reform Act of 1984. While the *Salerno* Court upheld the statute under both substantive and procedural due process challenges, its decision was based on the provisions which required a "prompt detention hearing" and the fact that any detention would be of limited length due to the strictures of the Speedy Trial Act. *Salerno,* 481 U.S. at 747, 107 S.Ct. at 2101.

Section 242(a)(2) has no such built-in limitations or guarantees. Although § 242A of the INA, 8 U.S.C. § 1252a, specifies expedited procedures for deportation of aliens convicted of committing aggravated felonies, there is no mandate that the proceedings be completed within any specific period of time.[3] *See Paxton,* 745 F.Supp. at 1264; *Leader,* 744 F.Supp. at 508. Moreover, it does not appear from the record in this case that the INS made any effort to comply with § 242A, insofar as the deportation proceedings against Kellman were not initiated until after his release from state custody in March, 1990. Under the *Salerno* standard, therefore, § 242(a)(2) must be held to violate Kellman's substantive due process rights.

---

**3.** Expedited procedures for deportation of aliens convicted of aggravated felonies.

    (a) The Attorney General shall provide for the availability of special deportation proceedings ... for aliens convicted of aggravated felonies. Such proceedings shall be conducted ... in a manner which eliminates the need for additional detention ... and in a manner which assures expeditious deportation, where warranted, following the end of the alien's incarceration for the underlying sentence.

    (d)(1) Notwithstanding any other provision of law, the Attorney General shall provide for the initiation and, to the extent possible, the completion of deportation proceedings, and any administrative appeals thereof, ... before the alien's release from incarceration for the underlying felony.

8 U.S.C. § 1252a (1988).

Moreover, in both *Paxton* and *Leader,* § 242(a)(2) was held to violate procedural due process, based on the Supreme Court's warning that a "purpose to injure [society] could not be imputed generally to all aliens subject to deportation." *Carlson v. Landon,* 342 U.S. 524, 538, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952).

> We believe that [§ 242(a)(2)'s] mandate is precisely the type of impermissible imputation of a threat to society that *Carlson* did not countenance. Section 242(a)(2) does not permit any type of hearing to question whether bail should be permitted, but instead, makes a general rule applicable to all aliens convicted of one of three types of crimes. The fact that the statute is limited to these specific crimes as in *Salerno* does not cure this defect since no case-by-case determination of suitability for release on bail is permitted by the statute.

*Leader,* 744 F.Supp. at 508; *see also Paxton,* 745 F.Supp. at 1264. The requirements of procedural due process spelled out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) require an individual bail determination where, as here, "[a] bail hearing would not pose significant fiscal or administrative burdens on the government and would greatly minimize the risk of erroneous deprivation of a liberty interest." *Leader,* 744 F.Supp. at 508 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903); *see also Paxton,* 745 F.Supp. at 1264.

On the procedural due process issue, the government asserts that Kellman has been afforded an adequate opportunity to contest his classification as an aggravated felon. This does not answer the question of whether he has had a sufficient opportunity to challenge his detention pending the outcome of the substantive contest. The weakness of the government's position is emphasized by its claim that "there is no deprivation of procedural due process merely because [Kellman] *may ultimately*

*be found* to be within that class of aliens statutorily ineligible for release." (Government's Memorandum of Law in Further Opposition to Petition for a Writ of Habeas Corpus, Oct. 4, 1990 at 9) (emphasis added). In fact, this demonstrates the precise problem with § 242(a)(2): Kellman is denied an opportunity for a bail hearing during the time in which he is contesting his deportation. If he succeeds in his challenge, then he will perforce be outside the bounds of 242(a)(2), and thus should not have been held without bail in the first place.[4]

## CONCLUSION

For the reasons set forth above, and those enunciated in *Leader v. Blackman, supra,* and *Paxton v. INS, supra,* Kellman's challenge to the provision of the INA which denies him a meaningful bail determination is found to be unconstitutional. The INS is directed to give Kellman an individual bail hearing within 30 days of the date of this opinion. Without such a hearing, the writ will issue.

It is so ordered.

---

4. In *Morrobel,* the court rejected the plaintiff's procedural due process claim, stating that "it is not the lack of an actual bail hearing that Plaintiff complains of but rather the effect of [§ 242(a)(2) ] in binding the Immigration Judge during that proceeding." *Morrobel,* 744 F.Supp. at 727. However, procedural due process cannot be satisfied merely by the opportunity for a hearing where the result of that hearing is statutorily predetermined.