Theresa ST. JOHN, Petitioner,

v.

Edward J. McELROY, Assistant District Director, Deportation, Immigration and Naturalization Service, New York District Office, Respondent.

No. 95 Civ. 9810 (KMW).

United States District Court, S.D. New York.

March 4, 1996.

As Amended May 7, 1996.

---

Kerry William Bretz, New York City, for petitioner.

James F. Loprest, Jr., Mary Jo White, U.S. Attorney for S.D.N.Y., New York City, for respondent.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Petitioner Theresa St. John ("St. John"), a lawful permanent resident alien, is currently detained by the Immigration and Naturalization Service ("INS"), pending a final determination by the Board of Immigration Appeals ("BIA") as to whether she may be excluded from the United States due to her Bermudian drug conviction, based on acts committed while she was a juvenile. St. John contends that the procedures applied by the INS at her parole hearing were insufficient to satisfy Fifth Amendment due process requirements. I agree, and I therefore remand for a second parole hearing before an immigration judge.

### I. *Background*

On December 18, 1995, this court issued an Opinion directing the INS to grant St. John a parole hearing, as required by the due process clause. *See St. John v. McElroy*, 95 Civ. 9810 (KMW), 1995 WL 753936 (S.D.N.Y. December 18, 1995) (the "December 18 Opinion").

On December 22, 1995, the INS conducted a parole hearing for St. John, which resulted in a December 29, 1995, written decision (the "INS Decision") denying her parole application.

On January 23, 1996, this court issued a second Opinion and Order, which was subsequently amended on February 6, 1996. *See St. John v. McElroy*, 95 Civ. 9810(KMW), 1996 WL 49956 (S.D.N.Y. February 6, 1996) (the "February 6 Opinion"). The February 6 Opinion—originally, and as amended—enjoined the INS (1) to provide St. John with access to her medical records, and (2) to allow an independent physician to examine St. John.[1]

### II. *Analysis*

#### A. *Whether St. John Is Statutorily Ineligible For Parole*

█ In considering the question whether the hearing conducted on remand satisfied procedural due process, I first consider the INS's argument that St. John was not entitled to any process at all, with regard to her parole determination, because she is statutorily ineligible for a parole grant. *See* § Immigration and Nationality Act ("INA") § 236(e), 8 U.S.C. § 1226(e); *see also* INS Decision, pp. 3–4. Section 236(e) states that an alien with an "aggravated felony" conviction "shall" be detained unless certain circumstances, not applicable here, exist.

The INS did not cite § 236(e) as a ground for initially denying St. John parole without a hearing. However, when St. John sought a parole hearing from this court, counsel for the INS argued that, due to § 236(e), remand for a parole hearing would be futile.

In my December 18 Opinion, I declined to hold that a hearing would be futile, because I remained in doubt as to (1) whether St. John's Bermuda conviction, based on acts committed when she was a juvenile, constituted an "aggravated felony" conviction, and (2) whether § 236(e) is constitutional, under the due process clause, as applied to permanent resident aliens such as St. John. *See*

---

**1.** This Opinion and Order assumes familiarity with my two earlier opinions, which set out in greater detail the facts of this case.

*St. John,* 1995 WL 753936, at *6–*7. In my December 18 Opinion, I did not definitively resolve either of these questions, but noted simply that, because the INS had not submitted sufficient argument as to the former, and had not briefed the latter, the INS had not borne its burden of convincing me that remand would be futile. *Id.*

■ Now the INS had submitted further briefing on both of these questions. For the moment, I assume *arguendo* INS has persuaded me that St. John's Bermuda conviction counts as an "aggravated felony" conviction under § 236(e), despite the facts (1) that the conviction is based on conduct that occurred when St. John was a juvenile, and (2) that therefore federal jurisdiction over the offense would have been discretionary, had St. John been prosecuted in the United States.

Even on this assumption, the INS has still not persuaded me that § 236(e) is constitutional under the due process clause, as applied to permanent resident aliens like St. John.[2] *St. John,* 1995 WL 753936, at *7. The *Kellman* opinion in this district held that Congress cannot constitutionally render a permanent resident alien in deportation proceedings ineligible for bail, on the basis of an aggravated felony conviction alone, without a case-by-case determination of suitability for release on bail. *Kellman v. District Director, United States Immigration and Naturalization Service,* 750 F.Supp. 625 (S.D.N.Y.1990) (holding unconstitutional then-applicable version of INA § 242(a)(2), 8 U.S.C. § 1252(a)(2)).[3] To do so, *Kellman* held, was to improperly impute a purpose to injure society to all aliens who, having served sentences for aggravated felonies, were subject to deportation, thereby creating an irrebuttable presumption of bad motive—regardless of the nature of the crime the alien had committed, the alien's conduct while imprisoned, or any other, relevant fact special to the alien seeking parole. *Id.* at 628.

*Kellman*'s reasoning is directly applicable to § 236(e). Like the deportation statute that was effective when *Kellman* was decided, § 236(e) imputes a purpose to injure society to all detained aliens with aggravated felony convictions, regardless of the circumstances of the individual case.

The INS contends, however, that *Kellman* is inapplicable here because St. John is in exclusion, not deportation, proceedings. To support its argument, the INS points to case law upholding the application of § 236(e) in exclusion proceedings, despite due process challenges. Yet all of the cases the INS cites involve refugees applying for asylum, not returning permanent resident aliens like St. John. *See, e.g., Gisbert v. United States Attorney General,* 988 F.2d 1437 (5th Cir. 1993) (case of "Mariel Cuban" who was an excluded, non-naturalized refugee and who did not challenge exclusion order); *Alvarez–Mendez v. Stock,* 941 F.2d 956 (9th Cir.1991) (case of "Mariel Cuban" who was a non-naturalized refugee subject to final exclusion order), *cert. denied sub nom. Alvarez–Mendez v. Henry,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *Fernandez–Roque v. Smith,* 734 F.2d 576 (11th Cir.1984) (case of "Mariel Cuban" who was a non-naturalized refugee); *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (en banc) (case of Haitian aliens who were detained in Florida and sought asylum), *aff'd,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

■ The INS's analogy between cases involving asylum applicants, who never were vested with due process rights, and this case, which involves a returning lawful permanent

2. I note that the Director has never argued that St. John—who has received a determination from an immigration judge that she is excludable and who is appealing that determination to the BIA—is no longer properly classified as a returning permanent resident alien. That is, the Director has not suggested that the immigration judge's order excluding St. John is a *final* revocation of her permanent resident status, despite her pending appeal.

3. After being modified by 1990 and 1991 amendments, § 242(a)(2) now allows parole of an alien with an aggravated felony conviction who is being detained pending deportation, if "the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings." *See* INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B).

resident, who still possesses due process rights, is highly questionable. As the Supreme Court made clear in *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), returning permanent resident aliens possess greater due process rights than do aliens seeking initial admission to the United States, due to their greater ties to this country. *Id.* at 32, 103 S.Ct. at 329.

■ Moreover, the reasoning of the refugee cases the INS cites is inapposite in the case of a returning permanent resident alien. The refugee cases cited by the INS hold that an entering alien who has no constitutional right to admission also has no right to an adjudication as to whether he or she should be paroled. *See, e.g., Gisbert,* 988 F.2d at 1442; *Alvarez–Mendez,* 941 F.2d at 963; *Fernandez–Roque,* 734 F.2d at 582; *Jean,* 727 F.2d at 971–72. This inference is based on a similarity between an entering alien's parole, and an entering alien's admission into the United States. *See Fernandez–Roque,* 734 F.2d at 582 (because "parole is part of the admissions process ... its denial or revocation does not rise to the level of a constitutional infringement"); *see also Jean,* 727 F.2d at 971–72 ("the immediate implications of parole and legal admission are identical in a number of important respects"). Thus, the cases the government cites directly hold only that § 236(e) is constitutional *as applied to an asylum applicant.* Yet, unlike a refugee, a returning lawful permanent resident such as St. John has a right to be admitted to the United States, unless she is determined to be excludable.

As Judge Sweet aptly reasoned in *Kellman,* with regard to the then-applicable deportation statute:

> the precise problem with [a statute allowing aliens with aggravated felony convictions to be held without bail is that the alien] is denied an opportunity for a bail hearing during the time in which he is contesting his [immigration status]. If he succeeds in his challenge, then he will perforce be outside the bounds of [the stat-

ute], and thus should not have been held without bail in the first place.

*Kellman,* 750 F.Supp. at 628; *see also id.* at 628, n. 4.

This is the precise problem with the exclusion statute, § 236(e), as applied to permanent resident aliens such as St. John, as well. If § 236(e) were to apply, then St. John, although she possesses due process rights, would be denied an opportunity for a parole hearing even as she is contesting her immigration status. If St. John were ultimately to succeed in her challenge, it would be clear, in retrospect, that she should not have been held without bail in the first place. Yet she would have been denied an individualized bail determination.

For these reasons, I hold that § 236(e) is unconstitutional as applied to the class of returning permanent resident aliens who, under applicable law, retain due process rights despite their absence from the country, as does St. John. *See St. John v. McElroy,* 1995 WL 753936, at *2–*5 (outlining law relevant to whether returning resident alien retains due process rights, and holding that St. John is entitled to due process).

**B. *Whether the Parole Decision Satisfied Due Process***

Having held that, despite § 236(e), St. John has a right to a parole hearing at which she is accorded due process, I now consider whether, on remand, St. John received all the process that was due.

**1. *The Director's Application of the Regulations***

On remand, the Director applied regulations that state, *inter alia,* that "[t]he parole of aliens who have serious medical conditions in which continued detention would not be appropriate would generally be justified by 'emergent reasons.'" 8 C.F.R. § 212.5(a).[4]

The regulations also state, in addition, that the INS District Director may parole an alien if he determines that "continued detention [of the alien] is not in the public inter-

---

4. I note that this regulation was promulgated against the backdrop of § 236(e)'s wholesale de-

nial of parole to aggravated felons awaiting exclusion, which I have found unconstitutional. It

est," as long as the alien presents "neither a security risk nor a risk of absconding." 8 C.F.R. §§ 212.5, 212.5(2)(V).

a. *The Serious Medical Condition Finding*

■ The INS Decision stated that St. John, despite her previous suicide attempt, did not have a serious medical condition justifying parole. *See* 8 C.F.R. § 212.5(a)(1). Yet, as I noted in my February 6 Opinion, the INS Decision failed to set out the medical basis for this conclusion. *See St. John*, 1996 WL 49956, at *2. Specifically, the INS Decision failed to incorporate or discuss any of St. John's medical records, or any of the opinions of her treating doctors—except for that of Dr. Andrew, who indicated that, contrary to the INS's determination, St. John *did* have a serious medical condition. *Id.*

The Decision, therefore, did not set forth a sufficient basis for this court's review of the "serious medical condition" determination. *Id.*[5]

b. *The Security Risk/Risk to Abscond Finding*

■ In addition to finding that St. John did not have a serious medical condition justifying parole, the INS Decision also found that St. John's parole was not otherwise in the public interest, because St. John presented a security risk and/or a risk to abscond.

Specifically, the INS found that (1) solely because St. John, in its view, was very likely eventually to be deemed excludable, St. John presented a risk to abscond, *see* INS Decision, pp. 3–4, and that (2) solely due to the fact of her Bermudian drug conviction, St. John posed "a threat to the safety of the community." *Id.*, p. 4.

These findings are problematic, in that they thwart the individualized determination that due process requires. Suppose that, as the INS reasons, an immigration judge's decision excluding an alien, plus an aggravated felony conviction, together suffice to establish a risk to abscond and a threat to the safety of the community. If this is true, then any alien with any aggravated felony conviction awaiting a BIA appeal is unparolable, regardless of his or her individualized circumstances, and the INS has—in effect, if not in form—applied § 236(e), which I held unconstitutional above. *Cf. Hamaya v. McElroy*, 797 F.Supp. 186, 192 (E.D.N.Y.1992) (INS's use of likely excludability to conclusively determine risk of absconding for purposes of making parole determination creates "administrative Catch–22" in which no alien may ever qualify for parole).

■ Due process requires more: it requires a consideration of whether St. John, viewed as an individual, presents a risk to abscond, and a threat to the community's safety. *Cf. United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 2103, 95 L.Ed.2d 697 (1987) (pretrial detention permissible where "the Government musters convincing proof that the arrestee ... presents a *demonstrable* danger to the community") (emphasis added); *id.* at 751, 107 S.Ct. at 2103 ("[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee

---

could be argued that Congress would have modified its judgment that a serious medical condition generally merits parole, had it taken into account that, as I have held, aggravated felons must constitutionally be accorded a parole determination.

However, I note that the INS has not made this argument, but has instead taken the position through the proceedings in this case that, absent § 236(e), the applicable parole regulations would be those contained in 8 C.F.R. § 212.5(a).

5. St. John also challenged the INS Decision on the ground that, while the INS's position was that the burden was on St. John to show that she

had a serious medical condition, the INS nevertheless refused to give her access to her medical records, or to allow an independent doctor to examine her, prior to the hearing. I need not decide whether, as St. John argues, these two facts together constitute a due process violation. The issue is moot because (1) as I have noted above, remand is necessary because the INS Decision did not set out its medical basis; and (2) pursuant to this court's January 23 Opinion, St. John will be examined by an independent doctor and will be granted access to her medical records prior to the hearing on remand.

from executing that threat"); *cf. Hamaya,* 797 F.Supp. at 192 (where sentence has been fully served, criminal record alone provides no basis for inferring that alien is a flight risk).

St. John's conviction for importing six ounces of cocaine into Bermuda when she was seventeen constitutes at least some minimal evidence that St. John now, at twenty-one, constitutes a threat to the community. Yet balanced against this evidence is (1) St. John's lack of any other criminal history, and any history of violent crime; (2) her admission of responsibility for, and repentance for, her crime; (3) her close family ties in this country; and (4) the considerable efforts she has made to be reunited with her daughter Toahina St. John ("Toahina"), who has sickle cell anemia.[6]

Similarly, St. John's likelihood of eventually being excluded from this country constitutes at least some evidence that she might be a risk to abscond. Yet balanced against this evidence is (1) St. John's mother's steady employment and long maintenance of the same residence; (2) the fact that two of St. John's siblings and her mother are permanent residents of the United States and her daughter is a United States citizen; (3) the fact that St. John herself has an offer of employment if she is released; and, especially, (4) the fact that Toahina needs frequent medical oversight and care.

For St. John to go into hiding *with* Toahina would likely mean that Toahina would be deprived of the medical care she needs; for St. John to go into hiding *without* Toahina would likely mean that St. John would be deprived of her daughter's company. Either outcome seems extremely unlikely, given all the evidence that St. John has submitted of St. John's concern for her daughter, the efforts she has made to be with her daughter, and the way that separation from her daughter adversely affects St. John's depressive, and at times even suicidal, state.

Moreover, St. John's parole determination could be conditioned on the posting of a bail bond; if this were done, St. John's absconding would cause irreparable financial harm to her family, and likely impede Toahina's ever receiving the medical care that she needs. Based on the record before this court, it seems highly unlikely that St. John would abscond if a bail bond were required.

Nevertheless, this court cannot substitute its judgment for that of the INS. It can only point to factors raised before the INS that the INS did not take into account, because the INS relied, instead, on generalizations based on St. John's status as an alien with an aggravated felony conviction awaiting exclusion. Due to the use of these generalizations, I find that the INS Decision did not make a properly individualized determination as to whether St. John present a threat to the community, or a risk of absconding.

2. *Whether An Independent Decision-maker Is Necessary To Satisfy Due Process*

■ St. John contends that the hearing she was accorded was constitutionally defective in that it was conducted by an INS hearing officer, not an independent decision-maker. According to the parties, and to this court's research, no court has yet squarely considered the question whether a returning legal permanent resident alien who is entitled to constitutional due process is therefore entitled to a parole hearing before an impartial adjudicator, while he or she awaits exclusion.

Before considering this question, I note at the outset that the INS makes no response to St. John's argument that she is entitled to an impartial adjudicator, except to suggest that the court should not consider the argument because it was not raised before this court earlier in the proceedings, or before the INS at the hearing on remand.

It would have been futile for St. John to raise this issue before the INS hearing officer. The hearing officer, unlike this court, was empowered only to apply the relevant

---

**6.** The INS Decision notes two of these factors— St. John's lack of a history of violent crime and her family ties to the community—but neverthe-less reasons that her prior conviction conclusively establishes that St. John is a threat to the community. INS Decision, p. 4.

parole regulations, not to hold that due process required that the parole decision be transferred to another decisionmaker. Moreover, the hearing officer held the view that § 236(e) was constitutional, *see* INS Decision, pp. 3–4. Thus, even if St. John had successfully prevailed on her "impartial adjudicator" claim before the hearing officer, the hearing officer would not have transferred the case to an immigration judge for a hearing for which he believed St. John was statutorily ineligible under § 236(e).

While it would have been futile for St. John to raise the due process "impartial adjudicator" issue before the INS hearing officer, it is true that St. John should have raised this issue before this court earlier, in the context of her initial habeas corpus petition. I nevertheless exercise my discretion to consider the issue rather than deeming it waived. St. John, with the American Civil Liberties Union ("ACLU") as amicus, raises a serious and important constitutional question directly implicated by the facts of this case. Moreover, a second remand will be necessary, regardless of who the decisionmaker is.

■ I begin my due process inquiry by noting that the standard governing what process is due is set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See, e.g., Flores v. Meese*, 942 F.2d 1352, 1364 (9th Cir.1991) (en banc) (analysis used in *Mathews* is applicable to due process question in immigration detention context), *rev'd. on other grounds sub nom. Reno v.*

*Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Under *Mathews*, a court is directed to consider (1) the private interest that the government action affects; (2) the risk that the procedures currently utilized will result in an erroneous deprivation of that interest and, conversely, the extent to which that risk could be lessened by the addition of more safeguards; and (3) the government's interest in maintaining current procedures. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

First, the private interest affected is St. John's liberty interest, which is of the highest constitutional import. I note, by way of analogy, that the Supreme Court has held that, in the context of hearings that address the question whether an alien may legally be deported, due process requires an examiner "whose independence and tenure are so guarded [by applicable law] as to give the assurance of neutrality"—precisely because, in such proceedings, an important liberty interest is at stake.[7] *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950).

Granted, parole determinations concern a far more temporary liberty interest than do substantive determinations as to deportation or exclusion. Nevertheless, all of these determinations involve a liberty interest to be free of confinement. The INS has itself invoked an analogy between the liberty interest vindicated by admission and that vindicated by parole, in order to justify denying due process rights in parole determinations to refugees awaiting exclusion. *See, e.g., Gisbert, supra; Alvarez–Mendez, supra;*

---

7. In arguing for an impartial adjudicator, the American Civil Liberties Union ("ACLU"), an amicus in this case, also points out that, in deportation proceedings, an alien is entitled to a bond determination before an independent immigration judge. *See* 8 C.F.R. § 242.2(c). Thus, if this court were to hold that due process does not require an impartial adjudicator in exclusion proceedings, the process St. John would receive would be less than the process she would receive in deportation proceedings and, indeed, less than the process a non-permanent resident alien would receive in deportation proceedings.

This point is persuasive, but not dispositive. Courts have never held that a lawful permanent resident in exclusion proceedings is entitled to all of the protections Congress affords aliens in deportation proceedings. *See, e.g., Correa v. Thornburgh*, 901 F.2d 1166, 1174 n. 10 (2d Cir.1990) ("[T]here is no requirement that exclusion and

deportation grounds be analogous"); *see also Hamaya*, 797 F.Supp. at 189 (rejecting argument that returning resident alien in exclusion proceedings should enjoy same procedures as resident alien in deportation proceedings); *but see Bedoya–Valencia v. INS*, 6 F.3d 891, 895 (2d Cir.1993) (under equal protection guarantee of Fifth Amendment's due process clause, discrimination between returning alien in exclusion proceedings and his "more sedentary counterpart" in deportation proceedings may in some cases be irrational).

I note that St. John challenges the constitutionality of the procedures applied to her under the Fifth Amendment's implicit equal protection clause, as well as its due process clause. However, because I hold that due process requires an impartial adjudicator, I need not reach the equal protection issue.

Fernandez–Roque, supra; Jean, supra. *The INS can hardly consistently disavow this analogy where, as here, such an analogy benefits the alien.*

Second, there are good structural reasons to think that, absent an impartial decision-maker, the alien may be erroneously deprived of a liberty interest. Due to political and community pressure, the INS, an executive agency, has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community. In contrast, because permanent resident aliens cannot vote, the INS has little incentive—except due to pressure by groups such as the ACLU's Immigrant Rights Project—to release such aliens. *Cf. Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234 (1938) (in equal protection context, aliens as a class are a prime example of a "discrete and insular minority" unable to effect political solutions, so that strict scrutiny is appropriate where classifications discriminate based on alienage)); *cf. also Hamaya*, 797 F.Supp. at 192 (because INS parole decisions carry "presumption of regularity," individualized hearing, not just written decision is proper).

This structural situation creates a powerful potential for bias against aliens in the INS's parole determinations. Conversely, an impartial decisionmaker would greatly lessen the likelihood of bias, and the possibility of an erroneous deprivation of the alien's constitutionally protected liberty interest.

Finally, the INS has some interest in maintaining its current procedures, as applied to lawful permanent resident aliens, but that interest is significantly less weighty than the alien's liberty interest.

The balance of all of the relevant factors under *Mathews* convinces me that an impartial adjudicator is necessary to vindicate the requirements of due process in this context.[8]

---

**8.** Because I hold that an impartial adjudicator is necessary, I need not reach St. John's argument that due process was also violated by the INS hearing and INS Decision because (1) the INS

III. *Conclusion*

For the reasons given above, I remand for a parole hearing before an immigration judge within seven days of the date this order is issued. On remand, the immigration judge is hereby directed to state clearly, on the record, the basis for his individualized determination as to whether St. John should be granted parole. A transcript of the hearing shall be made available to the parties upon request.

SO ORDERED.

officer who conducted the hearing was not the officer who issued the written decision; and (2) the hearing was not transcribed.