Albert **EKEKHOR** Petitioner,

v.

Curtis J. **ALJETS**, District Director of the Chicago District Office of the Immigration and Naturalization Service, Respondent.

No. 97 C 3954.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 17, 1997.

Lisa J. Palumbo, Legal Assistance Foundation of Chicago, Chicago, IL, for Petitioner.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The petitioner, Albert Ekekhor, a lawful permanent resident, is currently being detained by the Immigration and Naturalization Service ("INS") pending a final determination by the Board of Immigration Appeals as to whether he may be excluded from the United States. Mr. Ekekhor seeks a writ of habeas corpus, maintaining, among other things, that his denial of parole pending the outcome of his appeals denies him due process under the law. For the reasons set forth below, the writ of habeas corpus will issue.

### Background

The petitioner, Albert Ekekhor, a native of Nigeria, became a lawful permanent resident of the United States through marriage in 1985. In 1992, Mr. Ekekhor was arrested at John F. Kennedy International Airport and charged with attempting to smuggle heroin

into the United States. He plead guilty to the charge and was incarcerated. Mr. Ekekhor was released in October, 1994, and moved to Elgin, Illinois. In October, 1996, the Immigration and Naturalization Service ("INS") arrested Mr. Ekekhor while he met with his parole officer. Mr. Ekekhor had not violated his parole at the time of his arrest. The INS eventually placed Mr. Ekekhor in exclusion proceedings, arguing that as a result of his heroin conviction, Mr. Ekekhor was excludable from the United States.[1]

On December 19, 1996, Mr. Ekekhor convinced an immigration judge that the Transitional Period Custody Rules ("Transitional Rules") contained in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") applied to him and that he could be released on bond pending his exclusion hearing. The judge ordered a bond in the amount of $2,500. The following day, the INS filed a notice of appeal to the Board of Immigration Appeals and sought a stay of the judge's order. The Board granted the stay on December 20, 1996. The Board noted there were serious questions presented regarding an immigration judge's ability to entertain bond requests in exclusion proceedings and directed the parties to file briefs addressing a number of specific issues. (Pet. Ex. B). To date, the Board has taken no action regarding this appeal.

■ On March 17, 1997, a second immigration judge granted Mr. Ekekhor a waiver of exclusion. The INS also appealed this decision to the Board, challenging Mr. Ekekhor's statutory eligibility for a waiver and the immigration judge's discretionary decision to grant the request. This appeal remains pending before the Board. On April 30, 1997, Mr. Ekekhor made a written request to the District Director of the INS, Curtis Aljets, to be paroled from custody pending the outcome of the appeals.[2] On May 27, 1997, Mr. Aljets rejected Mr. Eke-

khor's request for parole in a six sentence letter. This petition for habeas corpus relief was filed on May 30, 1997.

### Jurisdiction

■ Mr. Aljets first argues that I lack jurisdiction to entertain this habeas petition because Mr. Ekekhor has failed to exhaust his administrative remedies. According to 8 U.S.C. § 1105a(c), "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations."[3] Mr. Ekekhor is not appealing an order of exclusion, but an order denying bond pending the exclusion determination. The Seventh Circuit has noted in the deportation context that "bond hearings are separate and apart from deportation hearings" and "[a] bond determination is not a final order of deportation." *Gornicka v. INS*, 681 F.2d 501, 505 (1982); see also *National Ctr. for Immigrants' Rights v. INS*, 791 F.2d 1351, 1354 (9th Cir.1986) (finding exhaustion requirement only applies to orders of exclusion and not to conditions imposed on bonds prior thereto), *rev'd on other grounds*, 481 U.S. 1009, 107 S.Ct. 1881, 95 L.Ed.2d 489 (1987); *Montero v. Cobb*, 937 F.Supp. 88, 90–91 (D.Mass.1996) (same).

Mr. Ekekhor is not appealing an order of exclusion. Indeed, he won his exclusion hearing on the merits. Instead, he appeals the denial of a bond, which does not appear to be covered by the statute in issue. Accordingly, I find I have jurisdiction to hear Mr. Ekekhor's petition.

### Due Process

Mr. Ekekhor argues that his parole denial by the district director, Mr. Aljets, violated his due process rights. Mr. Ekekhor petitioned for parole after an immigration judge ruled in his favor on the merits of his exclu-

---

1. Mr. Ekekhor was originally placed in deportation proceedings. Mr. Ekekhor successfully argued that since he had not made an actual "entry" into the United States, the proper proceeding for his case was one for exclusion.

2. In immigration law, "parole" refers to an alien's ability to be released from custody into

the United States while exclusion proceedings are pending.

3. This section of the United States Code was repealed by IIRIRA effective April 1, 1997. Since proceedings in this case began before the effective date of appeal, this section still governs.

sion proceeding and the INS appealed the immigration judge's decision. The INS appealed the immigration's judge's decision on two grounds, questioning first, Mr. Ekekhor's eligibility for an exclusion waiver and second, the discretionary decision to grant the waiver. Before Mr. Aljets made his decision on Mr. Ekekhor's parole, the Board of Immigration Appeals issued a decision finding individuals like Mr. Ekekhor are eligible for waiver of exclusion. *In re Fuentes–Campos,* (BIA Interim Decision 3318), 1997 WL 269368 (May 14, 1997) (en banc). Mr. Aljets nonetheless rejected Mr. Ekekhor's parole petition, although the only remaining issue on appeal was the discretionary decision of the immigration judge in granting the waiver. Mr. Ekekhor argues that Mr. Aljets was not a disinterested decision-maker because he was also the person appealing the merits decision and further, Mr. Aljets abused his discretion by failing to consider relevant evidence to Mr. Ekekhor's petition.

Mr. Aljets argues that the release of excludable aliens is solely within the discretionary power of the Attorney General and that 8 U.S.C. § 1226(e)[4] mandates that Mr. Ekekhor, due to his heroin conviction, be kept in detention until there is a final decision of admissibility. In *St. John v. McElroy,* 917 F.Supp. 243 (S.D.N.Y.1996), the court considered the constitutionality of Section 1226(e) as it applied to permanent resident aliens like Mr. Ekekhor. The court noted Section 1226(e) "imputes a purpose to injure society to all detained aliens with aggravated felony convictions, regardless of the circumstances of the individual case." *Id.* at 246. Consequently, the court found Section 1226(e) unconstitutional because it did not take into account the due process rights of lawful permanent residents.

Section 1226(e) denies lawful permanent residents an individualized bail determination or parole determination. Yet, it is possible a lawful permanent resident could succeed on the merits of his immigration hearing and thus, should never have been detained in the first place. *Id.* at 247. This scheme is inconsistent with the due process rights that have historically been granted lawful permanent residents. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) ("Our cases have frequently suggested that a continuously present resident alien is entitled to a fair hearing when threatened with deportation.").[5] Accordingly, Section 1226(e) has consistently been found unconstitutional as applied to lawful permanent residents in exclusion proceedings. *Alba v. McElroy,* No. 96 CIV. 8748(DLC), 1996 WL 695811, at *2 (S.D.N.Y. Dec.4 1996); *Thomas v. McElroy,* No. 96 CIV. 5065(JSM), 1996 WL 487953, at *2 (S.D.N.Y. Aug. 27, 1996) (same); *Cruz–Taveras v. McElroy,* No. 96 CIV. 5068(MBM), 1996 WL 455012, at *5 (S.D.N.Y. Aug.13, 1996); *St. John,* 917 F.Supp. at 247.

I find the reasoning of the *St. John* court persuasive. Lawful permanent residents have due process rights that are not recognized by Section 1226(e). Accordingly, I find Section 1226(e) unconstitutional as it applies to the class of lawful permanent residents, including Mr. Ekekhor.[6]

The next consideration is what process Mr. Ekekhor is entitled to under the due process clause. The framework for this inquiry is set out in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**4.** Section 1226(e) states, in pertinent part, that "[p]ending a determination of excludability, the Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation and regardless of the rearrest or further confinement in respect to the same offense)."

**5.** Permanent lawful residents in exclusion proceedings have the same due process rights of aliens in deportation proceedings. *Landon,* 459 U.S. at 33, 103 S.Ct. at 329–30.

**6.** The INS in *St. John* and in the instant action cites numerous cases upholding Section 1226(e) in exclusion proceedings. As the *St. John* court noted, these cases are inapposite because they deal with refugees applying for asylum and not lawful permanent residents like Mr. Ekekhor. Permanent resident aliens possess greater due process rights than aliens seeking initial entrance into the country. *Landon,* 459 U.S. at 32, 103 S.Ct. at 329.

Three distinct factors must be considered: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of the interest through procedures currently used and the extent the risk could be lessened with additional safeguards; and (3) the government's interest in maintaining existing procedures. *Id.* at 335, 96 S.Ct. at 903. The private interest at stake is Mr. Ekekhor's liberty, which is one of the most precious interests an individual has under our Constitution.

Further, the risk of erroneous deprivation is particularly high given the current procedures in place. Presently, the district director has the sole authority to make parole determinations. As the *St. John* court noted, "[d]ue to political and community pressure, the INS, an executive agency, has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community." 917 F.Supp. at 251. The risk of erroneous deprivation is particularly stark in the instant case where an impartial immigration judge, after careful consideration of the evidence, determined Mr. Ekekhor should be paroled. (Pet. Ex. A at 3–4). Contrarily, Mr. Aljets rejected Mr. Ekekhor's parole petition with a six sentence letter that indicates very little consideration of the fact Mr. Ekekhor has been a lawful permanent resident since 1985, that Mr. Ekekhor's probation officer thought the criminal act committed by Mr. Ekekhor was aberrant behavior and that Mr. Ekekhor was a model probationer, that Mr. Ekekhor has been attending college at Roosevelt University and will soon graduate, that Mr. Ekekhor has a full-time job for a division of Kodak, and that Mr. Ekekhor is active in church and volunteer organizations. (Pet. Ex. A at 3). Mr. Ekekhor further notes that Mr. Aljets is in the conflicted position of deciding the parole petition while simultaneously appealing Mr. Ekekhor's victory on the merits of the waiver of exclusion.

The *St. John* court found the current parole structure "creates a powerful potential for bias against aliens in the INS's parole determinations." 917 F.Supp. at 251. A parole determination before an impartial immigration judge would significantly lessen the likelihood of an erroneous deprivation of Mr. Ekekhor's constitutionally protected liberty interest. *Id.* at 251; *see also Alba*, 1996 WL 695811, at *3 (finding impartial adjudicator will provide an unbiased view of the merits of parole petition); *Thomas*, 1996 WL 487953, at *3 (same); *Cruz–Taveras*, 1996 WL 455012, at *7 (same).

The third factor to be considered is the INS's interest in maintaining its current procedures. While there is no doubt the INS has some interest and convenience in maintaining current procedures, it does not outweigh Mr. Ekekhor's liberty interest. *See Alba*, 1996 WL 695811, at *3 (finding INS's interest does not outweigh liberty interest); *Thomas*, 1996 WL 487953, at *4 (same); *Cruz–Taveras*, 1996 WL 455012, at *7 (same); *St. John*, 917 F.Supp. at 251.[7] There is no reason to believe that a parole hearing before an immigration judge will significantly burden the INS.[8] '

### Conclusion

An immigration judge determined Mr. Ekekhor should be paroled on bond pending the determination of his exclusion proceedings. The INS appealed that decision, questioning the immigration judge's authority to make a parole decision. I have determined that the immigration judge did have the authority to make the parole determination and that the judge properly exercised such authority. Accordingly, I lift the stay on the immigration judge's determination that Mr.

---

7. I note that one court has found that INS's interest outweighs the detainee's liberty interest. *Garcia v. United States*, No. 96 CIV. 4061 BSJ, 1996 WL 412018, at *4–5 (S.D.N.Y. July 22, 1996). But, like other courts that have since considered the issue, I do not find Mr. Ekekhor's situation factually analogous to the alien in *Garcia* and I do not find the *Garcia* court's reasoning persuasive.

8. Indeed, it appears that immigration judges routinely hold bond hearings for those aliens going through deportation proceedings. 8 C .F.R. § 242.2(d). One judge considering this issue found that such hearings "typically last 10 to 15 minutes." *Cruz–Taveras*, 1996 WL 455012, at *7.

Ekekhor may be released on bond.[9] The writ of habeas corpus will issue.[10]

---

9. The INS argues that under 8 C.F.R. § 3.6(a), "[e]xcept as provided under § 242.2(d) of this chapter...the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal...nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification." However, § 242.2(d), the exception to § 3.6(a), allows aliens that have been granted bond by immigration judges in deportation proceedings to be released while the INS appeals the immigration judge's custody decision. Since I have found that immigration judges may also make bond determinations in exclusion proceedings of *lawful permanent residents*, it is appropriate that these aliens also be allowed to remain released while the INS appeals a custody decision. Also, in Mr. Ekekhor's case, *the major issue of the INS appeal was* whether an immigration judge has the authority to grant bond in an exclusion proceeding, which I have ruled on.

10. My conclusion is the same under both the Transitional Rules and the law as it stood before the Transitional Rules took effect. Without deciding the issue, it appears the Transitional Rules may apply to Mr. Ekekhor. *In re Noble*, (BIA Interim Decision 3301), 1997 WL 61453 (Jan. 16, 1997) (en banc). The Transitional Rules specifically permit Mr. Ekekhor's release pending an exclusion determination. IIRIRA § 303(b)(3)(B)(i). The INS argues, however, that, even under the Transitional Rules, the dictates of Section 1226(e) apply. Since I have concluded that Section 1226(e) is unconstitutional as applied to lawful permanent residents, that argument is unavailing. Further, for the due process reasons set forth above, a release determination under the Transitional Rules, at least in regards to lawful permanent residents, must be made by an immigration judge.