**Juan Carlos CABREJA–ROJAS A30–123–793, Petitioner,**

v.

**Janet RENO, Attorney General of the United States, and Edward McElroy, New York District Director, Immigration and Naturalization Service, Respondents.**

No. 98 Civ. 1737(LAK).

United States District Court, S.D. New York.

March 25, 1998.

Michael M. Maney, Sean R. O'Brien, Helaine Barnett, Gemma Solimene, Olivia Cas-sin, David M. Stern, The Legal Aid Society, Lucas Guttentag, Judy Rabinovitz, American Civil Liberties Union Immigrants' Rights Project, Scott A. Rosenberg, Civil Appeals & Law Reform Unit Foundation, for Petitioner.

Aaron M. Katz, Asst. U.S. Atty., Mary Jo White, U.S. Atty., for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This petition for a writ of habeas corpus presents the question whether the Due Process Clause requires that a permanent resident alien who is subject to a final order of deportation is entitled to a hearing before a decision maker independent of the Immigration and Naturalization Service ("INS"), rather than the INS district director, on his application for release pursuant to the Transitional Period Custody Rules ("TPCR"). On the return of petitioner's order to show cause, the Court concluded that it does and entered an order directing the petitioner's release unless the INS affords petitioner a hearing before an Immigration Judge ("IJ") within ten days of the date of the order. This opinion now sets forth the basis for that decision.

### Facts

Petitioner, now age 32, has been a lawful permanent resident of the United States since the age of 4. His entire family resides in this country.

In 1990, petitioner was convicted in New York State court of attempted sale of a controlled substance in the third degree and sentenced to probation. He was convicted of parole violation in 1995, based in part on a New Jersey credit card theft conviction, and sentenced to one to three years in prison. He succeeded in shortening the sentence by serving time in a shock incarceration program and was released in late 1995.

While petitioner was in New Jersey custody, the INS commenced deportation proceedings against petitioner on the basis of the New York drug conviction. Petitioner sought a waiver of deportation pursuant to Section 212(c) of the Immigration and Na-

tionality Act.[1] In 1996, however, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"),[2] which eliminated the possibility of waiver of deportation for those convicted of aggravated felonies. The statute did not directly answer the question whether it precluded waivers in favor of aliens who, like petitioner, had applied prior to the enactment of AEDPA. Nevertheless, in February 1997, the Attorney General ruled that AEDPA precluded waivers in favor those who had applied prior to its enactment.[3] In consequence, the IJ denied petitioner's application and ordered him deported, a decision that was affirmed in January 1998 by the Board of Immigration Appeals ("BIA"). Petitioner has sought review of the deportation order in the Second Circuit, which has stayed the order pending its review. His case evidently will be governed by the decision in *Henderson v. INS*,[4] which raises the same issue and was argued on January 21, 1998.

On January 20, 1998, petitioner was taken into INS custody in the wake of the BIA's affirmance of the deportation order and now is incarcerated in Pike County, Pennsylvania. On January 27, 1998, petitioner, through counsel, applied pursuant to the TPCR to the district director of the INS for release on his own recognizance or on bond pending review of the deportation order. The request was denied on February 13, 1998 in a brief letter. Petitioner promptly appealed the district director's custody decision to the BIA.

Petitioner filed this petition on March 10, 1998. Although the initial filing appeared to seek review of the district director's decision as well as other relief, petitioner at oral argument limited his claim to the single contention that the Due Process Clause entitles him to have his application for release pursuant to the TPCR heard by a decision maker independent of the INS such as an IJ.

*Discussion*

Insofar as is relevant here, the TPCR [5] provide that the Attorney General may release petitioner and others similarly situated if "the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding..." [6] The regulations implementing the TPCR provide that an alien seeking release thereunder may apply to the district director,[7] whose decision is subject to *de novo* review by the BIA.[8]

In this case, it is undisputed that petitioner was admitted lawfully to the United States. He contended before the district director, unsuccessfully, that he should be released pending the outcome of his petition for review of the deportation order because he would not pose a danger and would appear for scheduled proceedings. Much of his petition reads as if he were seeking review by this Court of the district director's decision, which of course he may not now obtain because he has appealed from that decision to the BIA and he therefore has not exhausted

1. 8 U.S.C. § 1182(c).

2. Pub.L. 104–132, 110 Stat. 1214 (1996).

3. *Matter of Soriano*, Int. Dec. No. 3289, 1996 WL 426888, 1997 WL 159795 (A.G. Feb. 21, 1997).

4. No. 97–4050.

5. The TPCR were triggered on October 9, 1996 for a one year period when the INS Commissioner, acting on behalf of the Attorney General, notified Congress of the Attorney General's intention to invoke the rules. *See Matter of Noble*, Int. Dec. 330 1, 1997 WL 61453 (BIA 1997). They were reinvoked for an additional year, and now are in effect until October 1998. *See* 74 Int.Rel. 1552 (Oct. 10, 1997).

6. Pub.L. 104–208, Div. C, Title III, § 303(b), 110 Stat. 3009–587 (1996), *reprinted following* 8 U.S.C.A. § 1226 (1997 Supp.).

7. 8 C.F.R. § 236.1(d) (Mar. 6, 1997). References to regulations dated March 6, 1997 are to those provisions promulgated to implement changes in the Act made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, Title III–A, 110 Stat. 3009 (Sept. 30, 1996). The regulations were published in the Federal Register on March 6, 1997. *See* 62 Fed.Reg. 10312, 1997 WL 93131 (Mar. 6, 1997).

8. *See Hazzard v. INS*, 951 F.2d 435, 440 n. 4 (1st Cir.1991); *Rivera v. INS*, 791 F.2d 1202, 1205 (5th Cir.1986); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 74 S.Ct. 499, 98 L.Ed. 681(1954).

496

his administrative remedies.[9] As noted above, however, petitioner has abandoned all such claims. He presses only a more basic, structural issue concerning the procedure by which his application for release pending review was determined—he contends that the Due Process Clause entitles him to a hearing on the issue before an impartial adjudicator.

*Exhaustion*

■ The government's threshold response is that this aspect of the petition too should be dismissed for failure to exhaust. In considering exhaustion arguments, however, "it is important to focus on the precise issue as to which the petitioner seeks judicial relief."[10] The question therefore is whether petitioner has any administrative remedy with respect to his procedural due process claim, which is in the nature of a facial challenge to the INS regulations governing procedures under the TPCR, and, if so, whether he must exhaust it. The Court is persuaded that he has no administrative remedy and, in any case, that exhaustion would not be required in view of the purely constitutional nature of the claim.

■ To begin with, the parties agree that the BIA is not empowered to address constitutional challenges to statutes and regulations.[11] Moreover, while the government certainly is correct in saying that administrative procedures may not be bypassed simply by converting one's claim into an alleged deprivation of due process,[12] it concedes the point that is dispositive here: exhaustion is not required with respect to "facial constitutional attacks on a statute or regulation, inasmuch as administrative agencies such as the BIA may not pass upon direct constitutional

challenges to the statutes or regulations they administer."[13] In consequence, the Court holds that petitioner has no administrative remedy with respect to the specific issue that remains before this Court—his claimed entitlement to a bail or parole hearing before an impartial adjudicator.

*The Merits*

■ Lawful resident aliens may not be deprived of their liberty without due process of law.[14] The fundamental question presented here thus is whether the application to the district director was all the process that was due.

■ The standard that governs the sufficiency of the process afforded prior to the deprivation of a constitutionally protected interest is set out in the Supreme Court's decision in *Mathews v. Eldridge.*[15] The court must consider the private interest that the government action in question affects, the risk that the procedures used may result in erroneous deprivation of that interest, and the government's interest in maintaining the current procedures.[16]

■ Petitioner's private interest here is that of freedom from confinement, a liberty interest "of the highest constitutional import."[17] While the parole decision affects petitioner's liberty only for an interim period, the interest nevertheless is extremely substantial, all the more so in light of the delays that seem to occur in a great many immigration-related matters.

The second of the *Eldridge* factors addresses the issue whether there are "good structural reasons to think that, absent an

---

9. *See, e.g., Salazar v. Reich,* 940 F.Supp. 96, 98 (S.D.N.Y.1996).

10. *Id.* at 99 (citing *United States v. LaVallee,* 312 F.2d 308, 309 (2d Cir.1963)).

11. Resp.Br. 15; Pet.Br. 18; *see St. John v. McElroy,* 917 F.Supp. 243, 249–50 (S.D.N.Y.1996) (INS hearing officer empowered only to apply relevant regulations, "not to hold that due process required that the parole decision be transferred to another decisionmaker"); *Matter of C-,* Int. Dec. 3180, 1992 WL 200361 (BIA 1992).

12. Resp.Br. 15 (citing *Johnpoll v. Thornburgh,* 898 F.2d 849, 850–51 (2d Cir.1990)).

13. *Id.* (citing *Johnpoll v. Thornburgh,* 898 F.2d at 851).

14. *See Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (resident alien "entitled to a fair hearing when threatened with deportation").

15. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

16. *Id.* at 335.

17. *St. John,* 917 F.Supp. at 250.

impartial decisionmaker, the alien may be erroneously deprived of a liberty interest." [18] As Judge Wood has pointed out in the analogous context of determining whether permanent resident aliens have a constitutional right to an independent decision maker with respect to parole pending exclusion proceedings, that element is satisfied here.

> "The INS ... has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community. In contrast, because permanent resident aliens cannot vote, the INS has little incentive ... to release such aliens." [19]

They are a prime example of a "discrete and insular minority" unable to protect itself through the political process.[20]

Finally, the Court acknowledges that the INS has some interest in adhering to the procedure set out in the regulations—determination of bail or parole applications in these circumstances by the district director on papers. But the interest is not particularly weighty. To begin with, the government has made no showing the INS would be inconvenienced to any greater extent by having these applications decided by IJs rather than district directors.[21] And while a requirement of full-blown testimonial hearings

before immigration judges as opposed to determinations by district directors on paper applications would impose a substantial added burden, that is not the issue here. At this stage, petitioner contends only that he is entitled to an impartial adjudicator.[22]

These considerations have led several judges in this district to hold that the Due Process Clause requires an independent decision maker in analogous circumstances. Judges Cote, Martin, Mukasey and Wood all have held that a legal resident alien has a due process right to an independent decision maker on the issue of parole pending exclusion proceedings.[23] These cases are indistinguishable in principle from this one, as the distinction between parole pending exclusion and parole pending deportation is not material here. The government's reliance on Judge Jones' ruling in *Garcia v. United States*[24] is misplaced because the issue there was whether the applicant was entitled to a full blown hearing on his parole application, not whether the proceeding, whatever it was, had to be conducted before an independent decision maker.

While the government does not concede that the Constitution requires an independent decision maker, it does argue that any such requirement is satisfied by the availability to petitioner of *de novo* review of the district director's decision by the BIA. The

---

18. *Id.* at 251.

19. *Id. See also Cruz–Taveras v. McElroy*, No. 96 Civ. 5068(MBM), 1996 WL 455012, at *6 (S.D.N.Y. Aug.13, 1996) (expressing concern over " 'cookie cutter' parole adjudication" by INS, indicating that INS may be "affording alien parole applicants considerably less than the individualized consideration that due process requires").

20. *See Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)). This is not to say, however, that federal actions affecting lawful resident aliens are subject to strict constitutional scrutiny. As explained in *Abreu v. Callahan*, 971 F.Supp. 799, 810–15 (S.D.N.Y.1997), they ordinarily are not.

21. *See Cruz–Taveras*, 1996 WL 455012, at *7 (noting that IJs conduct bond hearings in deportation proceedings daily and that such hearings typically last 10 to 15 minutes).

22. That is not to say that petitioner concedes that the decision maker need not take testimonial evidence. He is free to make such an argument to the IJ, who will have to decide whether there are any material issues of fact and, if so, decide in the first instance whether the resolution of any such issues requires the taking of testimony. The Court notes that in the analogous context of bail determinations, district courts have broad discretion in determining the manner in which they gather the information pertinent to pretrial detention decisions. *See, e.g., United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir.1986).

23. *Alba v. McElroy*, No. 96 Civ. 8748(DLC), 1996 WL 695811, at *3–4 (S.D.N.Y. Dec.4, 1996) (Cote, J.); *Thomas v. McElroy*, No. 96 Civ. 5065(JSM), 1996 WL 487953, at *4 (S.D.N.Y. Aug.27, 1996) (Martin, J.); *Cruz–Taveras*, 1996 WL 455012, at *5–6 (Mukasey, J.); *St. John*, 917 F.Supp. at 243 (Wood, J.)

24. *Garcia v. U.S.*, 96 Civ. 4061(BSJ), 1996 WL 412018 (S.D.N.Y. July 22, 1996).

difficulty with the argument, however, is that the BIA's review is strictly appellate in nature. It rules on a fixed record passed up to it by the district director.[25] In consequence, the INS procedures do not permit petitioner and others similarly situated to make their cases for release pending deportation to an independent decision maker in the first instance—and thus do not permit them to attempt to persuade such a decision maker that they are believable, that testimonial evidence should be taken in the context of a particular case, or any of the host of other things that may contribute to an informed *nisi prius* decision. Thus, the lack of an independent decision maker at the first stage in the process, the stage at which the record is compiled, may well affect the scope and nature of the record that the BIA reviews *de novo*. Accordingly, the Court is unpersuaded by the government's contention and holds that the Due Process Clause requires that applications for bail or parole pending deportation proceedings must be determined in the first instance by independent decision makers, not the district director of the INS.

### Conclusions

The Court emphasizes that this is a very narrow decision. It intimates no view as to whether petitioner should be released or on what terms, as those are matters entirely for the executive branch in the first instance and subject thereafter only to limited review by the courts. Nor does it pass on the question whether the independent decision maker must conduct a testimonial hearing. It holds only that the petitioner is entitled to have his application for release pending the resolution of his deportation proceedings determined by a decision maker independent of the INS. In consequence, it has entered an order providing that petitioner is entitled to have his application heard by such a decision maker on or before a date certain, absent which he must be released. As this fully disposes of the petition, the Clerk is directed to close the file.

SO ORDERED.

25. 8 C.F.R. § 3.5 (1998).